1  AARON EZROJ
   QUI TAM LAW, P.C.
2  1024 Bayside Dr. # 394
   Newport Beach, CA 92660
3  aaron.ezroj@qtamlaw.com
   Telephone: 949-312-1042
4

5  Attorney for Relator

6

7

8              **UNITED STATES DISTRICT COURT**

9              **NORTHERN DISTRICT OF ILLINOIS**

10  UNITED STATES OF AMERICA *ex rel.* PPP     Case No.: 1:24-cv-09837
    ELIGIBILITY EXPERTS LLC,
11                                              Judge: Honorable Jeffrey I. Cummings
12              Plaintiffs,
                                                Magistrate Judge: Honorable Young B. Kim
13          v.
14  NAPLETON'S ARLINGTON HEIGHTS               **FIRST AMENDED COMPLAINT FOR**
    MOTORS, INC. dba NAPLETON'S               **VIOLATIONS OF THE FALSE CLAIMS**
15  ARLINGTON HEIGHTS CHRYSLER               **ACT INCLUDING:**
    DODGE JEEP RAM; ED NAPLETON
16  ELMHURST IMPORTS, INC. dba ED            **(1) CAUSE OF ACTION FOR**
    NAPLETON ACURA; ED NAPLETON              **SUBMISSION OF FALSE CLAIM 31**
17  WESTMONT IMPORTS, INC. dba               **U.S.C. § 3729(a)(1)(A);**
    NAPLETON WESTMONT PORSCHE;               **(2) CAUSE OF ACTION FOR FALSE**
18  NAPLETON'S AUTOWERKS, INC. dba           **STATEMENT IN SUPPORT OF FALSE**
    LOVES PARK MERCEDES; NAPLETON'S          **CLAIM 31 U.S.C. § 3729(a)(1)(B);**
19  RIVER OAKS MOTORS, INC. dba              **(3) CAUSE OF ACTION FOR**
    NAPLETON'S RIVER OAKS CHRYSLER           **CONSPIRACY TO VIOLATE THE**
20  DODGE JEEP RAM; ED NAPLETON              **FALSE CLAIMS ACT 31 U.S.C. §**
    CALUMET CITY IMPORTS, INC. dba           **3729(a)(1)(C); AND**
21  NAPLETON RIVER OAKS HYUNDAI;             **(4) CAUSE OF ACTION FOR**
    NAPLETON AUTOMOTIVE OF URBANA,           **AVOIDANCE OF OBLIGATION TO PAY**
22  LLC dba GENESIS OF URBANA,               **GOVERNMENT 31 U.S.C. § 3729(a)(1)(G)**
    NAPLETON'S AUTO PARK OF URBANA,
23  NAPLETON'S URBANA MITSUBISHI,
    NAPLETON'S HYUNDAI OF URBANA,            **DEMAND FOR JURY TRIAL**
24  NAPLETON'S KIA OF URBANA,
    NAPLETON'S MAZDA OF URBANA,
25  NAPLETON'S VOLKSWAGEN OF
    URBANA; NAPLETON'S SCHAUMBURG
26  PONTIAC-GMC INC. dba NAPLETON'S
    SCHAUMBURG BUICK GMC; NAPLETON
27  MOTOR CORP dba NAPLETON SUBARU,
    PORSCHE ROCKFORD; NAPLETON
28

---

                    FIRST AMENDED COMPLAINT

1  URBANA IMPORTS LLC dba NAPLETON'S
AUTO PARK OF URBANA, NAPLETON'S
2  TOYOTA OF URBANA, NAPLETON'S
SCION OF URBANA; NAPLETON'S PARK
3  RIDGE LINCOLN INC. dba NAPLETON
LINCOLN; NAPLETON'S RIVER OAKS
4  CADILLAC, INC. dba NAPLETON'S RIVER
OAKS CADILLAC; NAPLETON'S
5  SCHAUMBURG SUBARU INC. dba
NAPLETON'S SCHAUMBURG SUBARU;
6  NAPLETON'S COUNTRYSIDE MOTORS,
INC. dba NAPLETON'S COUNTRYSIDE
7  MAZDA; NAPLETON SCHAUMBURG
MOTORS, INC. dba NAPLETON'S
8  SCHAUMBURG MAZDA; NAPLETON
LIBERTYVILLE, INC. dba NAPLETON
9  MAZDA OF LIBERTYVILLE; NAPLETON'S
AUTOWERKS OF BOURBONNAIS, INC.
10  dba MERCEDES-BENZ OF BOURBONNAIS;
NAPLETON'S PALATINE MOTORS
11  HOLDING, INC. dba NAPLETON'S
PALATINE MAZDA; FRAN NAPLETON
12  LINCOLN, INC. dba NAPLETON LINCOLN
OF BLUE ISLAND; ED NAPLETON OAK
13  LAWN IMPORTS, INC. dba ED NAPLETON
HONDA IN OAK LAWN; NAPLETON
14  AURORA IMPORTS, INC. dba
NAPLETON'S VALLEY HYUNDAI;
15  NAPLETON'S GOLDCOAST IMPORTS,
INC. dba NAPLETON'S ASTON MARTIN
16  DOWNERS GROVE, NAPLETON
MASERATI DOWNERS GROVE; STEVE
17  FOLEY CADILLAC, INC.; NAPLETON 1050,
INC. dba NAPLETON CADILLAC OF
18  LIBERTYVILLE; NAPLETON 6677, INC. dba
LAND ROVER ROCKFORD, JAGUAR
19  ROCKFORD; NAPLETON FLEET, INC. dba
NAPLETON FLEET GROUP; NORTH
20  AMERICAN AUTOMOTIVE SERVICES,
INC. dba CASH4TECHS; OAK HILL
21  MARKETING; SESSLER FORD, INC. dba
NAPLETON FORD LIBERTYVILLE;
22  NAPLETON CARMEL MOTORS, LLC dba
NAPLETON HYUNDAI OF CARMEL;
23  NAPLETON'S AUTOWERKS OF INDIANA,
INC. dba NAPLETON SCHERERVILLE
24  MERCEDES; NAPLETON FISHERS
IMPORTS, LLC dba NAPLETON KIA OF
25  FISHERS; NAPLETON CARMEL IMPORTS,
LLC dba NAPLETON KIA OF CARMEL;
26  NAPLETON 1301 INC. dba NAPLETON
NISSAN SCHERERVILLE; NAPLETON
27  ITALIAN IMPORTS, LLC dba NAPLETON

28

MASERATI OF INDIANAPOLIS,
NAPLETON ALFA ROMEO OF
INDIANAPOLIS; NAPLETON TWIN CITIES
IMPORTS LLC dba LEXUS OF WAYZATA;
NAPLETON WAYZATA MOTORS, LLC dba
CHEVROLET OF WAYZATA; NAPLETON
ROCHESTER IMPORTS, LLC dba
MERCEDES-BENZ OF ROCHESTER; ED
NAPLETON ST. LOUIS IMPORTS, INC. dba
ED NAPLETON HONDA ST PETERS;
NAPLETON'S MID RIVERS MOTORS, INC.
dba NAPLETON'S MID RIVERS CHRYSLER
DODGE JEEP RAM FIAT; NAPLETON
HAZELWOOD IMPORTS, LLC dba
NAPLETON HYUNDAI; NAPLETON MID
RIVERS IMPORTS INC. dba NAPLETON'S
MID RIVERS KIA; NAPLETON ST. LOUIS
IMPORTS, LLC dba NAPLETON ST. LOUIS
NISSAN; NAPLETON AUTOWERKS
MISSOURI, INC. dba PORSCHE
SPRINGFIELD; NAPLETON WYOMING
VALLEY IMPORTS, INC. dba WYOMING
VALLEY BMW, AUDI WYOMING
VALLEY, SUBARU WYOMING VALLEY;
NAPLETON'S ELLWOOD MOTORS, INC.
dba NAPLETON ELLWOOD CITY
CHRYSLER DODGE JEEP RAM;
NAPLETON BROOKFIELD IMPORTS, LLC
dba TOYOTA OF BROOKFIELD;
NAPLETON BLUEMOUND IMPORTS, LLC
dba LEXUS OF BROOKFIELD; NAPLETON
AUTOWERKS WISCONSIN, INC. dba
NAPLETON CHEVROLET COLUMBUS;
NAPLETON'S NORTH PALM AUTO PARK,
INC dba NAPLETON'S NORTHLAKE
CHRYSLER DODGE JEEP RAM;
NAPLETON ENTERPRISES, LLC dba
NAPLETON KISSIMMEE CHRYSLER
DODGE JEEP RAM; NAPLETON'S PALM
BEACH IMPORTS, LLC dba NAPLETON'S
PALM BEACH ACURA; EFN WEST PALM
MOTOR SALES, LLC dba NAPLETON'S
WEST PALM HYUNDAI; NAPLETON
ORLANDO IMPORTS LLC dba
NAPLETON'S VOLKSWAGEN OF
ORLANDO; NAPLETON SANFORD
IMPORTS, LLC dba NAPLETON'S
VOLKSWAGEN OF SANFORD; NORTH
PALM MOTORS, LLC dba NAPLETON
NORTHLAKE KIA; NORTH PALM
HYUNDAI, LLC dba NAPLETON'S NORTH
PALM HYUNDAI; CLERMONT MOTORS,
LLC dba NAPLETON CLERMONT

CHRYSLER JEEP DODGE RAM; AUGUSTA
IMPORTS, LLC dba NAPLETON INFINITI
OF AUGUSTA; MACON IMPORTS, LLC dba
INFINITI OF MACON; EFN WESTMONT
REAL ESTATE HOLDINGS LLC; EFN
LANSING PROPERTY LLC; EFN URBANA
PROPERTIES LLC; NAPLETON
PROPERTIES LLC fka NAPLETON'S
ROCKFORD PROPERTIES LLC; SEDGLEY
PARTNERS LLC; EFN CARMEL
PROPERTIES LLC; EFN FISHERS
PROPERTIES LLC; EFN IMPORT
PROPERTIES LLC; EFN WAYZATA
PROPERTIES LLC; EFN ST PETERS
PROPERTY II LLC; EFN 4951 EXECUTIVE
CENTRE PROPERTY LLC; EFN ST. LOUIS
PROPERTY LLC; NAPLETON EQUITIES
LLC; EFN BROOKFIELD PROPERTY LLC;
EFN BLUEMOUND PROPERTY LLC; 100
WEST GOLF LLC; EFN HAZELWOOD
PROPERTIES LLC; NAPLETON
INVESTMENT PARTNERSHIP LP; EFN
ROCHESTER PROPERTIES LLC; EFN
HAZELWOOD PROPERTIES LLC; EFN
WYOMING VALLEY PROPERTIES LLC;
EFN ELLWOOD PROPERTY LLC; EFN
DOWNERS GROVE PROPERTY LLC; EFN
AURORA PROPERTY LLC; EDWARD F.
NAPLETON; MAUREEN NAPLETON;
STEPHEN R. NAPLETON; WILLIAM F.
NAPLETON; CHRISTOPHER NAPLETON;
PAUL NAPLETON; BRIAN NAPLETON;
KATHERINE NAPLETON; KEN STEVENS

Defendants.

# TABLE OF CONTENTS

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. PARTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

III. JURISDICTION AND VENUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

IV. FALSE CLAIMS ACT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

V. PAYCHECK PROTECTION PROGRAM . . . . . . . . . . . . . . . . . . . . . . . . . . 17

VI. PPP APPLICATION FRAUDS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

    A. SPECIFIC FRAUD NO. 1 Concealing Size . . . . . . . . . . . . . . . . . . . . . . . . . . 28
    B. SPECIFIC FRAUD NO. 2 Exceeding $20 Million Cap . . . . . . . . . . . . . . . . . . 39
    C. SPECIFIC FRAUD NO. 3 Misrepresenting Reduction in Gross Receipts . . . . . . . . 42
    D. SPECIFIC FRAUD NO. 4 Misrepresenting Financial Necessity . . . . . . . . . . . . . . 45
    E. SPECIFIC FRAUD NO. 5 Concealing and Continuing Illegal Sales Practices . . . . . 47

VII. PPP APPLICATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

VIII. CAUSES OF ACTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 79

    A. FIRST CAUSE OF ACTION Submission of False Claim . . . . . . . . . . . . . . . . . . 79
    B. SECOND CAUSE OF ACTION False Statement in Support of Claim . . . . . . . . . . 80
    C. THIRD CAUSE OF ACTION Conspiracy to Violate the False Claims Act . . . . . . . 80
    D. FOURTH CAUSE OF ACTION Avoidance of Obligation to Pay Government . . . . 81

IX. PRAYER FOR RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 82

X. DEMAND FOR JURY TRIAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 82

# LIST OF TABLES

Table 1: Defendant Dealerships' Group Size and Revenue Data . . . . . . . . . . . . . . . . . . . . . 5

Table 2: Defendant Dealerships' Common Management and Ownership . . . . . . . . . . . . . . . 32

Table 3: Defendants' Real Estate Holdings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

Table 4: Defendants' First Draw PPP Loans . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 74

Table 5: Defendants' Second Draw PPP Loans . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 76

Table 6:  Defendants' Jobs Reported on PPP Applications . . . . . . . . . . . . . . . . . . . . . . . 76

FIRST AMENDED COMPLAINT

Pursuant to the False Claims Act 31 U.S.C. §§ 3729 *et seq*., PPP Eligibility Experts LLC, on behalf of the United States of America, alleges the following:

## I. INTRODUCTION

1.      The United States Congress passed the Coronavirus Aid, Relief, and Economic Security ("CARES") Act to help stabilize the economy during the COVID-19 pandemic. The CARES Act created the Paycheck Protection Program ("PPP") to provide necessary payroll cost support for eligible small businesses. Millions of applicants collectively received hundreds of billions of dollars through PPP loans. PPP loan applications were processed by lenders who relied on representations made by applicants including certifications of eligibility. PPP loan applicants were later able to apply for forgiveness by certifying that PPP loan proceeds were used for eligible purposes.

2.      Napleton's Arlington Heights Motors, Inc. doing business as Napleton's Arlington Heights Chrysler Dodge Jeep RAM, Ed Napleton Elmhurst Imports, Inc. doing business as Ed Napleton Acura, Ed Napleton Westmont Imports, Inc. doing business as Ed Napleton Westmont Porsche, Napleton's Autowerks, Inc. doing business as Loves Park Mercedes, Napleton's River Oaks Motors, Inc. doing business as Napleton's River Oaks Chrysler Dodge Jeep RAM, Ed Napleton Calumet City Imports, Inc. doing business as Napleton River Oaks Hyundai, Napleton Automotive of Urbana, LLC doing business as Genesis of Urbana, Napleton's Auto Park of Urbana, Napleton's Urbana Mitsubishi, Napleton's Hyundai of Urbana, Napleton's Kia of Urbana, Napleton's Mazda of Urbana, Napleton's Volkswagen of Urbana, Napleton's Schaumburg Pontiac-GMC Inc. doing business as Napleton's Schaumburg Buick GMC, Napleton Motor Corp. doing business as Napleton Subaru, Porsche Rockford, Napleton Urbana Imports LLC doing business as Napleton's Auto Park of Urbana, Napleton's Toyota of Urbana, Napleton's Scion of Urbana, Napleton's Park Ridge Lincoln Inc. doing business as Napleton Lincoln, Napleton's River Oaks Cadillac, Inc. doing business as Napleton's River Oaks Cadillac, Napleton's Schaumburg Subaru, Inc. doing business as Napleton's Schaumburg Subaru, Napleton's Countryside Motors, Inc. doing business as Napleton's

Countryside Mazda, Napleton Schaumburg Motors, Inc. doing business as Napleton's Schaumburg Mazda, Napleton Libertyville, Inc. doing business as Napleton Mazda of Libertyville, Napleton's Autowerks of Bourbonnais, Inc. doing business as Mercedes-Benz of Bourbonnais, Napleton's Palatine Motors Holding, Inc. doing business as Napleton's Palatine Mazda, Fran Napleton Lincoln, Inc. doing business as Napleton Lincoln of Blue Island, Ed Napleton Oak Lawn Imports, Inc. doing business as Ed Napleton Honda in Oak Lawn, Napleton Aurora Imports, Inc. doing business as Napleton's Valley Hyundai, Napleton's Goldcoast Imports, Inc. doing business as Napleton's Aston Martin Downers Grove, Napleton Maserati Downers Grove, Steve Foley Cadillac, Inc., Napleton 1050, Inc. doing business as Napleton Cadillac of Libertyville, Napleton 6677, Inc. doing business as Land Rover Rockford, Jaguar Rockford, Napleton Fleet, Inc. doing business as Napleton Fleet Group, North American Automotive Services, Inc. doing business as Cash4Techs, Oak Hill Marketing, Sessler Ford, Inc. doing business as Napleton Ford Libertyville, Napleton Carmel Motors, LLC doing business as Napleton Hyundai of Carmel, Napleton's Autowerks of Indiana, Inc. doing business as Napleton Schererville Mercedes, Napleton Fishers Imports, LLC doing business as Napleton Kia of Fishers, Napleton Carmel Imports, LLC doing business as Napleton Kia of Carmel, Napleton 1301, Inc. doing business as Napleton Nissan Schererville, Napleton Italian Imports, LLC doing business as Napleton Maserati of Indianapolis, Napleton Alfa Romeo of Indianapolis, Napleton Twin Cities Imports, LLC doing business as Lexus of Wayzata, Napleton Wayzata Motors, LLC doing business as Chevrolet of Wayzata, Napleton Rochester Imports, LLC doing business as Mercedes-Benz of Rochester, Ed Napleton St. Louis Imports, Inc. doing business as Ed Napleton Honda St Peters, Napleton's Mid Rivers Motors, Inc. doing business as Napleton's Mid Rivers Chrysler Dodge Jeep RAM Fiat, Napleton Hazelwood Imports, LLC doing business as Napleton Hyundai, Napleton Mid Rivers Imports, Inc. doing business as Napleton's Mid Rivers Kia, Napleton St. Louis Imports, LLC doing business as Napleton St. Louis Nissan, Napleton Autowerks Missouri, Inc. doing business as Porsche Springfield, Napleton Wyoming Valley Imports, Inc. doing business as Wyoming Valley BMW, Audi Wyoming Valley, Subaru

Wyoming Valley, Napleton's Ellwood Motors, Inc. doing business as Napleton Ellwood City Chrysler Dodge Jeep RAM, Napleton Brookfield Imports, LLC doing business as Toyota of Brookfield, Napleton Bluemound Imports, LLC doing business as Lexus of Brookfield, Napleton Autowerks Wisconsin, Inc. doing business as Napleton Chevrolet Columbus, Napleton's North Palm Auto Park, Inc. doing business as Napleton's Northlake Chrysler Dodge Jeep RAM, Napleton Enterprises, LLC doing business as Napleton Kissimmee Chrysler Dodge Jeep RAM, Napleton's Palm Beach Imports, LLC doing business as Napleton's Palm Beach Acura, EFN West Palm Motor Sales, LLC dba Napleton's West Palm Hyundai, Napleton Orlando Imports, LLC doing business as Napleton's Volkswagen of Orlando, Napleton Sanford Imports, LLC doing business as Napleton's Volkswagen of Sanford, North Palm Motors, LLC doing business as Napleton Northlake Kia, North Palm Hyundai, LLC doing business as Napleton's North Palm Hyundai, Clermont Motors, LLC doing business as Napleton Clermont Chrysler Jeep Dodge RAM, Augusta Imports, LLC doing business as Napleton Infiniti of Augusta, Macon Imports, LLC doing business as Infiniti of Macon, EFN Westmont Real Estate Holdings LLC, EFN Lansing Property LLC, EFN Urbana Properties LLC, Napleton Properties LLC fka Napleton's Rockford Properties LLC, Sedgley Partners LLC, EFN Carmel Properties LLC, EFN Fishers Properties LLC, EFN Import Properties LLC, EFN Wayzata Properties LLC, EFN St Peters Property II LLC, EFN 4951 Executive Centre Property LLC, EFN St. Louis Property LLC, Napleton Equities LLC, EFN Brookfield Property LLC, EFN Bluemound Property LLC, 100 West Golf LLC, EFN Hazelwood Properties LLC, Napleton Investment Partnership LP, EFN Rochester Properties LLC, EFN Hazelwood Properties LLC, EFN Wyoming Valley Properties LLC, EFN Ellwood Property LLC, EFN Downers Grove Property LLC, EFN Aurora Property LLC, Edward F. Napleton, Maureen Napleton, Stephen R. Napleton, William F. Napleton, Christopher Napleton, Paul Napleton, Brian Napleton, Katherine Napleton, and Ken Stevens (the "Defendants") committed fraud in PPP applications totaling at least **$50,692,910** of PPP loans and forgiveness applications for these loans. Lenders also received an estimated approximately $1,609,814 in loan processing fees.

3.      Napleton Auto Group is one of the largest automobile dealerships in the United States. Affiliated entities of Napleton Auto Group have dozens of dealerships in Illinois and other states. Affiliated entities of Napleton Auto Group have thousands of employees, hold interests in valuable real estate worth over $174 million, in addition to any interests in automobiles on their dealership lots. Affiliated entities of Napleton Auto Group earn many millions of dollars of income selling and servicing automobiles, in addition to any income obtained from leasing their real estate to their dealerships. Per Napleton Auto Group websites: Napleton Auto Group is a single family-owned auto group with dozens of dealerships across several states. *See* Napleton Auto Group, https://www.ednapleton.com/ed-napleton-auto-group-history.htm, https://www.shopnapleton.com/about-us, and http://www.napleton.com/about.php (last visited October 7, 2024).

4.      PPP loan applications did not reflect the true size of affiliated entities of Napleton Auto Group. Instead, affiliated entities of Napleton Auto Group knowingly falsely claimed eligibility for PPP loans and supported their applications with documents that did not reveal information on their true number of employees, tangible net worth, income, and economic need. The Napleton Auto Group has several billion dollars of revenue annually, did not have a COVID-19 downturn (their sales and revenue steadily increased from 2019 to 2021), and their raking among dealerships stayed steadily high throughout this period. Moreover, Napleton Auto Group acquired additional automobile dealerships throughout the relevant period. Automotive News Research & Data Center (2024). Below is a table showing group size and revenue data for just the dealerships led by one of the Napleton family members, which is supported by documentation in Exhibit A.

FIRST AMENDED COMPLAINT

**Table 1: Defendant Dealerships' Group Size and Revenue Data**

| Year | Total Number of Dealerships | Total Units Sold | Group Revenue | Ranking |
|------|------|------|------|------|
| 2019 | 51 | 103,432 | $3,029,593,252 | 17 |
| 2020 | 52 | 111,453 | $3,347,299,647 | 13 |
| 2021 | 55 | 122,834 | $4,154,271,483 | 13 |

*See* Automotive News Research & Data Center (2024).

5. Napleton Auto Group was also ineligible for PPP loans because of their continuous illegal sales practices that were taking place contemporaneously with their PPP loan borrowing. *See* Federal Trade Commission and State of Illinois Settlement with Napleton Auto Group (2022). When affiliated entities of Napleton Auto Group applied for PPP loans, they certified that they were not involved in illegal activities. However, the illegal sales practices of Napleton Auto Group violated the United States Equal Credit Opportunity Act, Civil Rights laws aimed at stopping racial discrimination as the sales practices specifically targeted Black and Latino customers, the Federal Trade Commission Act, the Truth in Lending Act, and the Illinois Consumer Fraud and Deceptive Business Practices Act. These illegal sales practices ultimately forced the Napleton Auto Group to reach a $10 million settlement with the Federal Trade Commission and State of Illinois, which was record-setting for an auto dealership case. *See* Federal Trade Commission and State of Illinois Settlement with Napleton Auto Group (2022). The illegal activity made affiliated entities of Napleton Auto Group ineligible for the at least $50,692,910 of PPP funds that they received.

6. Such false claims and statements of affiliated entities of Napleton Auto Group were material in affiliated entities of Napleton Auto Group receiving PPP loans and lenders receiving loan processing fees. Without these false claims and statements, affiliated entities of Napleton Auto Group would not have received PPP loans and their lenders would not have received loan processing fees. These claims and statements thus violate the False Claims Act, §§

31 U.S.C. 3729 *et seq*.

7.      PPP Eligibility Experts LLC (the "Relator") brings this action on behalf of the United States of America against affiliated entities of Napleton Auto Group for treble damages and civil penalties arising from the Defendants' false claims in violation of the False Claims Act, 31 U.S.C. §§ 3729 *et seq*.

## II. PARTIES

8.      Relator PPP Eligibility Experts LLC was formed to identify PPP loan applicants who fraudulently obtained PPP funds and sought forgiveness of said funds. Relator used a series of public and non-public sources to independently research and investigate the representations made by PPP loan applicants. The many sources that Relator used in their investigation include, but are not limited to: (i) Crexi, a subscription-based commercial real estate database and brokerage platform used by real estate professionals; (ii) PropertyShark, a subscription-based real estate database and research tool used by real estate professionals; (iii) Automotive News Research & Data Center, a subscription-based research tool and database used by the automotive industry; (iv) various secretary of state databases containing business entity records; (v) voluminous datasets containing information on PPP loans; and (vi) court records, FOIA requests, and dealership reviews regarding Defendants' illegal and discriminatory sales practices. Relying on their finance, real estate, property management, legal, and other pertinent expertise, Relator analyzed the various sources of information and synthesized, explained, and detailed Defendants' frauds in extensive tables with hundreds of pages of supporting documents. Relator's principal place of business is in Irvine, California.

9.      Defendant Napleton's Arlington Heights Motors, Inc. doing business as Napleton's Arlington Heights Chrysler Dodge Jeep RAM is an automobile dealership located at 1155 W Dundee Rd, Arlington Heights, IL 60004.

10.     Defendant Ed Napleton Elmhurst Imports, Inc. doing business as Ed Napleton Acura is an automobile dealership located at 745 West Lake St, Elmhurst, IL 60126.

11.     Defendant Ed Napleton Westmont Imports, Inc. doing business as Ed Napleton

Westmont Porsche is an automobile dealership located at 201 E Ogden Ave, Westmont, IL 60559.

12. Defendant Napleton's Autowerks, Inc. doing business as Loves Park Mercedes is an automobile dealership located at 6600 E Riverside Blvd, Loves Park, IL 61111.

13. Defendant Napleton's River Oaks Motors, Inc. doing business as Napleton's River Oaks Chrysler Dodge Jeep RAM is an automobile dealership located at 17225 Torrence Ave, Lansing, IL 60438.

14. Defendant Ed Napleton Calumet City Imports, Inc. doing business as Napleton River Oaks Hyundai is an automobile dealership located at 1985 River Oaks Dr, Calumet City, IL 60409.

15. Defendant Napleton Automotive of Urbana, LLC doing business as Genesis of Urbana, Napleton's Auto Park of Urbana, Napleton's Urbana Mitsubishi, Napleton's Hyundai of Urbana, Napleton's Kia of Urbana, Napleton's Mazda of Urbana, Napleton's Volkswagen of Urbana is an automobile dealership located at 1111 Napleton Way, Urbana, IL 61802.

16. Defendant Napleton's Schaumburg Pontiac-GMC Inc. doing business as Napleton's Schaumburg Buick GMC located at 100 W Golf Rd, Schaumburg, IL 60195.

17. Napleton Motor Corp. doing business as Napleton Subaru, Porsche Rockford is an automobile dealership located at 505 N Perryville Rd, Rockford, IL 61107.

18. Defendant Napleton Urbana Imports LLC doing business as Napleton's Auto Park of Urbana, Napleton's Toyota of Urbana, Napleton's Scion of Urbana is an automobile dealership located at 1111 Napleton Way, Urbana, IL 61802.

19. Defendant Napleton's Park Ridge Lincoln Inc. doing business as Napleton Lincoln is an automobile dealership located at 1610 Waukegan Rd, Glenview, IL 60025.

20. Defendant Napleton's River Oaks Cadillac, Inc. doing business as Napleton's River Oaks Cadillac is an automobile dealership located at 1777 River Oaks Dr, Calumet City, IL 60409.

21. Defendant Napleton's Schaumburg Subaru, Inc. doing business as Napleton's

Schaumburg Subaru is an automobile dealership located at 919 W Higgins Rd, Schaumburg, IL 60195.

22.     Defendant Napleton's Countryside Motors, Inc. doing business as Napleton's Countryside Mazda is an automobile dealership located at 6060 S La Grange Rd, Countryside, IL 60525.

23.     Defendant Napleton Schaumburg Motors, Inc. doing business as Napleton's Schaumburg Mazda is an automobile dealership located at 110 W Golf Rd, Schaumburg, IL 60195.

24.     Defendant Napleton Libertyville, Inc. doing business as Napleton Mazda of Libertyville is an automobile dealership located at 1120 S Milwaukee Ave, Libertyville, IL 60048.

25.     Defendant Napleton's Autowerks of Bourbonnais, Inc. doing business as Mercedes-Benz of Bourbonnais is an automobile dealership located at 515 William R Latham Senior Dr, Bourbonnais, IL 60914.

26.     Defendant Napleton's Palatine Motors Holding, Inc. doing business as Napleton's Palatine Mazda is an automobile dealership located at 1811 N Rand Rd, Palatine, IL 60074.

27.     Defendant Fran Napleton Lincoln, Inc. doing business as Napleton Lincoln of Blue Island is an automobile dealership located at 2950 W 127th St, Blue Island, IL 60406.

28.     Defendant Ed Napleton Oak Lawn Imports, Inc. doing business as Ed Napleton Honda in Oak Lawn is an automobile dealership located at 5800 W 95th St, Oak Lawn, IL 60453.

29.     Defendant Napleton Aurora Imports, Inc. doing business as Napleton's Valley Hyundai is an automobile dealership located at 4333 Ogden Ave, Aurora, IL 60504.

30.     Defendant Napleton's Goldcoast Imports, Inc. doing business as Napleton's Aston Martin Downers Grove, Napleton Maserati Downers Grove is an automobile dealership located at 217 Ogden Ave, Downers Grove, IL 60515.

31.     Defendant Steve Foley Cadillac, Inc. is an automobile dealership located at 100

Skokie Rd, Northbrook, IL 60091.

32.     Defendant Napleton 1050, Inc. doing business as Napleton Cadillac of Libertyville is an automobile dealership located at 1050 S Milwaukee Ave, Libertyville, IL 60048.

33.     Defendant Napleton 6677, Inc. doing business as Land Rover Rockford, Jaguar Rockford is an automobile dealership located at 6677 E Riverside Blvd, Rockford, IL 61114.

34.     Defendant Napleton Fleet, Inc. doing business as Napleton Fleet Group is an automobile dealership with its principal place of business located at 1 Oakbrook Terrace #515, Oakbrook Terrace, IL 60181.

35.     Defendant North American Automotive Services, Inc. doing business as Cash4Techs is a management company with its principal place of business located at 1 Oakbrook Terrace #600, Oakbrook Terrace, IL 60181.

36.     Defendant Oak Hill Marketing is a marketing firm located at 1 Oakbrook Terrace #700, Oakbrook Terrace, IL 60181.

37.     Defendant Sessler Ford, Inc. doing business as Napleton Ford Libertyville is an automobile dealership located at 1010 S Milwaukee Ave, Libertyville, IL 60048.

38.     Defendant Napleton Carmel Motors, LLC doing business as Napleton Hyundai of Carmel is an automobile dealership located at 4200 E 96th St, Indianapolis, IN 46240.

39.     Defendant Napleton's Autowerks of Indiana, Inc. doing business as Napleton Schererville Mercedes is an automobile dealership located at 1349 Indianapolis Blvd, Schererville, IN 46375.

40.     Defendant Napleton Fishers Imports, LLC doing business as Napleton Kia of Fishers is an automobile dealership located at 13417 Britton Park Rd, Fishers, IN 46038.

41.     Defendant Napleton Carmel Imports, LLC doing business as Napleton Kia of Carmel is an automobile dealership located at 3355 Harper Rd, Indianapolis, IN 46240.

42.     Defendant Napleton 1301, Inc. doing business as Napleton Nissan Schererville is an automobile dealership located at 1301 Indianapolis Blvd, Schererville, IN 46375.

43. Defendant Napleton Italian Imports, LLC doing business as Napleton Maserati of Indianapolis, Napleton Alfa Romeo of Indianapolis is an automobile dealership located at 4180 E 96th St, Indianapolis, IN 46240.

44. Defendant Napleton Twin Cities Imports, LLC doing business as Lexus of Wayzata is an automobile dealership located at 16100 Wayzata Blvd, Wayzata, MN 55391.

45. Defendant Napleton Wayzata Motors, LLC doing business as Chevrolet of Wayzata is an automobile dealership located at 16200 Wayzata Blvd, Wayzata, MN 55391.

46. Defendant Napleton Rochester Imports, LLC doing business as Mercedes-Benz of Rochester is an automobile dealership located at 4447 Canal PL SE, Rochester, MN 55904.

47. Defendant Ed Napleton St. Louis Imports, Inc. doing business as Ed Napleton Honda St Peters is an automobile dealership located at 4780 N Service Rd, Saint Peters, MO 63376.

48. Defendant Napleton's Mid Rivers Motors, Inc. doing business as Napleton's Mid Rivers Chrysler Dodge Jeep RAM Fiat is an automobile dealership located at 4951 Veterans Memorial Pkwy, Saint Peters, MO 63376.

49. Defendant Napleton Hazelwood Imports, LLC doing business as Napleton Hyundai is an automobile dealership located at 649 Dunn St, Hazelwood, MO 63042.

50. Defendant Napleton Mid Rivers Imports, Inc. doing business as Napleton's Mid Rivers Kia is an automobile dealership located at 4955 Veterans Memorial Pkwy, Saint Peters, MO 63376.

51. Defendant Napleton St. Louis Imports, LLC doing business as Napleton St. Louis Nissan is an automobile dealership located at 10964 Page Avenue, St. Louis, MO 63132.

52. Napleton Autowerks Missouri, Inc. doing business as Porsche Springfield is an automobile dealership located at 3508 E Division St, Springfield, MO 65802.

53. Defendant Napleton Wyoming Valley Imports, Inc. doing business as Wyoming Valley BMW, Audi Wyoming Valley, Subaru Wyoming Valley is an automobile dealership located at 1470 Highway 315, Wilkes-Barre, PA 18702.

54.    Defendant Napleton's Ellwood Motors, Inc. doing business as Napleton Ellwood City Chrysler Dodge Jeep RAM is an automobile dealership located at 1000 Lawrence Ave, Ellwood City, PA 16117.

55.    Defendant Napleton Brookfield Imports, LLC doing business as Toyota of Brookfield is an automobile dealership located at 20655 W Capitol Dr, Brookfield, WI 53045.

56.    Defendant Napleton Bluemound Imports, LLC doing business as Lexus of Brookfield is an automobile dealership located at 20001 W Bluemound Rd, Brookfield, WI 53045.

57.    Defendant Napleton Autowerks Wisconsin, Inc. doing business as Napleton Chevrolet Columbus is an automobile dealership located at 800 Maple Ave, Columbus, WI 53925.

58.    Defendant Napleton's North Palm Auto Park, Inc. doing business as Napleton's Northlake Chrysler Dodge Jeep RAM is an automobile dealership located at 3701 Northlake Blvd, Lake Park, FL 33403.

59.    Defendant Napleton Enterprises, LLC doing business as Napleton Kissimmee Chrysler Dodge Jeep RAM is an automobile dealership located at 1460 E Osceola Pkwy, Kissimmee, FL 34744.

60.    Defendant Napleton's Palm Beach Imports, LLC doing business as Napleton's Palm Beach Acura is an automobile dealership located at 6870 Okeechobee Blvd, West Palm Beach, FL 33411.

61.    Defendant EFN West Palm Motor Sales, LLC doing business as Napleton's West Palm Hyundai is an automobile dealership located at 2301 Okeechobee Blvd, West Palm Beach, FL 33409.

62.    Defendant Napleton Orlando Imports, LLC doing business as Napleton's Volkswagen of Orlando is an automobile dealership located at 12700 E Colonial Dr, Orlando, FL 32826.

63.    Defendant Napleton Sanford Imports, LLC doing business as Napleton's

Volkswagen of Sanford is an automobile dealership located at 4175 S Orlando Dr, Sanford, FL 32773.

64.     Defendant North Palm Motors, LLC doing business as Napleton Northlake Kia is an automobile dealership located at 3626 Northlake Blvd, Palm Beach Gardens, FL 33403.

65.     Defendant North Palm Hyundai, LLC doing business as Napleton's North Palm Hyundai is an automobile dealership located at 3703 Northlake Blvd, Palm Beach Gables, FL 33403.

66.     Defendant Clermont Motors, LLC doing business as Napleton Clermont Chrysler Jeep Dodge RAM is an automobile dealership located at 15859 State Rd 50, Clermont, FL 34711.

67.     Defendant Augusta Imports, LLC doing business as Napleton Infiniti of Augusta is an automobile dealership located at 3315 Washington Rd, Augusta, GA 30907.

68.     Defendant Macon Imports, LLC doing business as Infiniti of Macon is an automobile dealership located at 4763 Riverside Dr, Macon, GA 31210.

69.     Defendant EFN Westmont Real Estate Holdings LLC is a real estate holding company with its principal place of business at 1 Oakbrook Terrace #600, Oakbrook Terrace, IL 60181. This real estate holding company, like the other real estate holding company defendants, holds valuable property outside of the official Napleton Auto Group corporate structure to shield the property from potential liabilities incurred by any connected Napleton Auto Group dealership.

70.     Defendant EFN Lansing Property LLC is a real estate holding company with its principal place of business at 1 Oakbrook Terrace #600, Oakbrook Terrace, IL 60181.

71.     Defendant EFN Urbana Properties LLC is a real estate holding company with its principal place of business at 1 Oakbrook Terrace #600, Oakbrook Terrace, IL 60181.

72.     Defendant Napleton Properties LLC fka Napleton's Rockford Properties LLC is a real estate holding company with its principal place of business at 2950 W 127th St, Blue Island, IL 60406.

73. Defendant Sedgley Partners LLC is a real estate holding company with its principal place of business at 10400 W Higgins #305, Rosemont, IL 60018.

74. Defendant EFN Carmel Properties LLC is a real estate holding company with its principal place of business at 1 Oakbrook Terrace #600, Oakbrook Terrace, IL 60181.

75. Defendant EFN Fishers Properties LLC is a real estate holding company with its principal place of business at 1 Oakbrook Terrace #600, Oakbrook Terrace, IL 60181.

76. Defendant EFN Import Properties LLC is a real estate holding company with its principal place of business at 1 Oakbrook Terrace #600, Oakbrook Terrace, IL 60181.

77. Defendant EFN Wayzata Properties LLC is a real estate holding company with its principal place of business at 1 Oakbrook Terrace #600, Oakbrook Terrace, IL 60181.

78. Defendant EFN St Peters Property II LLC is a real estate holding company with its principal place of business at 4780 N Service Rd, Saint Peters, MO 63376.

79. Defendant EFN 4951 Executive Centre Property LLC is a real estate holding company with its principal place of business at 1 Oakbrook Terrace #600, Oakbrook Terrace, IL 60181.

80. Defendant EFN St. Louis Property LLC is a real estate holding company with its principal place of business at 1 Oakbrook Terrace #600, Oakbrook Terrace, IL 60181.

81. Defendant Napleton Equities LLC is a real estate holding company with its principal place of business at 441 E 4th St, Hinsdale, IL 60521.

82. Defendant EFN Brookfield Property LLC is a real estate holding company with its principal place of business at 1 Oakbrook Terrace #600, Oakbrook Terrace, IL 60181.

83. Defendant EFN Bluemound Property LLC is a real estate holding company with its principal place of business at 1 Oakbrook Terrace #600, Oakbrook Terrace, IL 60181.

84. Defendant 100 West Golf LLC is a real estate holding company with its principal place of business at 110 W Golf Rd, Schaumburg, IL 60195.

85. Defendant EFN Hazelwood Properties LLC is a real estate holding company with its principal place of business at 1 Oakbrook Terrace #600, Oakbrook Terrace, IL 60181.

86.     Defendant Napleton Investment Partnership LP is a real estate holding company with its principal place of business at 1 Oakbrook Terrace #600, Oakbrook Terrace, IL 60181.

87.     Defendants EFN Rochester Properties LLC is a real estate holding company with its principal place of business at 1 Oakbrook Terrace #600, Oakbrook Terrace, IL 60181.

88.     Defendant EFN Hazelwood Properties LLC is a real estate holding company with its principal place of business at 1 Oakbrook Terrace #600, Oakbrook Terrace, IL 60181.

89.     Defendant EFN Wyoming Valley Properties LLC is a real estate holding company with its principal place of business at 1 Oakbrook Terrace #600, Oakbrook Terrace, IL 60181.

90.     Defendant EFN Ellwood Property LLC is a real estate holding company with its principal place of business at 1 Oakbrook Terrace #600, Oakbrook Terrace, IL 60181.

91.     Defendant EFN Downers Grove Property LLC is a real estate holding company with its principal place of business at 1 Oakbrook Terrace #600, Oakbrook Terrace, IL 60181.

92.     Defendant EFN Aurora Property LLC is a real estate holding company with its principal place of business at 1 Oakbrook Terrace #600, Oakbrook Terrace, IL 60181.

93.     Defendant Edward F. Napleton is an individual who directly controls and owns most of the Napleton Auto Group dealerships and property where the dealerships operate.

94.     Defendant Maureen Napleton is an individual who is an officer, director, member, and/or owner of certain Napleton Auto Group dealerships and/or property where the dealerships operate.

95.     Defendant Stephen R. Napleton is an individual who is an officer, director, member, and/or owner of certain Napleton Auto Group dealerships and/or property where the dealerships operate.

96.     Defendant William F. Napleton is an individual who is an officer, director, member, and/or owner of certain Napleton Auto Group dealerships and/or property where the dealerships operate.

97.     Defendant Christopher Napleton is an individual who is an officer, director,

member, and/or owner of certain Napleton Auto Group dealerships and/or property where the dealerships operate.

98. Defendant Paul Napleton is an individual who is an officer, director, member, and/or owner of certain Napleton Auto Group dealerships and/or property where the dealerships operate.

99. Defendant Brian Napleton is an individual who is an officer, director, member, and/or owner of certain Napleton Auto Group dealerships and/or property where the dealerships operate.

100. Defendant Katherine Napleton is an individual who is an officer, director, member, and/or owner of certain Napleton Auto Group dealerships and/or property where the dealerships operate.

101. Defendant Ken Stevens is an individual who has served as the Chief Financial Officer for Napleton Auto Group dealerships and/or property where the dealerships operate. He signed and/or initialed certain PPP loan applications and was listed as the primary contact for certain PPP loan applications.

## III. JURISDICTION AND VENUE

102. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 31 U.S.C. § 3732(a). The latter section specifically confers subject matter jurisdiction for this type of action, any action under 31 U.S.C. § 3730.

103. This Court has personal jurisdiction over the Defendants pursuant to 28 U.S.C. § 1391(b) and 31 U.S.C. § 3732(a) because one or more of the Defendants transacts business in the Northern District of Illinois. Moreover, 31 U.S.C. § 3732(a) allows for nationwide service of process.

104. Venue is proper in the Northern District of Illinois pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391(b), because one or more of the Defendants transacts business in the Northern District of Illinois. Moreover, events giving rise to this action took place in the Northern District of Illinois.

105.    Pursuant to 31 U.S.C § 3730(b)(2), the Relator must provide the government with a copy of a complaint and written disclosure of substantially all material evidence and material information in their possession. Relator has complied with this requirement by serving a complaint and written disclosure upon the then-United States Attorney for the Northern District of Illinois and upon the then-Attorney General of the United States.

106.    There has been no public disclosure of the specific frauds alleged in this complaint through the statutorily relevant public channels articulated in 31 U.S.C § 3730(e)(4)(A). While certain limited PPP loan information has been publicly available, prior to the filing of this complaint there was no public disclosure that Defendants committed the specific frauds alleged in this complaint. Relator is an original source of the specific frauds alleged herein as defined under 31 U.S.C § 3730(e)(4)(B) because Relator voluntarily provided this information to the government before the filing of this complaint, and has knowledge that is independent of and materially adds to any public disclosure to the extent such disclosure may exist. Relator researched and investigated public and non-public sources of information, and synthesized, explained, and detailed the specific frauds alleged herein in extensive tables with hundreds of pages of supporting documents.

## IV. FALSE CLAIMS ACT

107.    The False Claims Act, 31 U.S.C. §§ 3729 *et seq*. was established to allow the government to collect money from parties that have made false claims and statements to fraudulently obtain government funding.

108.    Pursuant to 31 U.S.C. § 3729(a)(1)(A), a party makes a false claim when they knowingly present, or cause to be presented, a false or fraudulent claim for payment or approval.

109.    Pursuant to 31 U.S.C. § 3729(a)(1)(B), a party makes a false statement when they knowingly make, use or cause to be made or used, a false record or statement material to a false or fraudulent claim.

110.    Pursuant to 31 U.S.C. § 3729(a)(1)(C), a party violates the False Claims Act when they conspire to commit a violation of particular subparagraphs of the False Claims Act,

including subparagraphs (a)(1)(A), (B) or (C).

111.    Pursuant to 31 U.S.C. § 3729(a)(1)(G), a party knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transit money or property to the government.

112.    The term "knowingly" means that a party, with respect to information: (i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information. 31 U.S.C. § 3729(b)(1)(A). Knowingly does not require proof of specific intent to defraud. 31 U.S.C. § 3729(b)(1)(B).

## V. PAYCHECK PROTECTION PROGRAM

113.    In 2020, the United States Congress passed the CARES Act so that small businesses could obtain relief during the COVID-19 pandemic. The CARES Act established the Paycheck Protection Program ("PPP") to help small businesses keep their employees on payroll during the pandemic. The PPP loan program was administered by the Small Business Administration and had various requirements for different types of businesses. In late 2020, Congress passed the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act. This Act allowed for a second round of PPP loans with increasingly specific requirements for small businesses. Millions of applicants collectively received hundreds of billions of dollars in PPP loans. While it was the intent of Congress that these funds be used by eligible businesses to support payroll costs, certain ineligible businesses applied for PPP funds and used these funds for purposes that were not the intent of Congress. Moreover, certain ineligible businesses sought loan forgiveness even though they were never eligible for PPP funds and did not use the funds for purposes that were the intent of Congress.

114.    Entities were able to apply for initial PPP loans (i.e., First Draw PPP loans) in 2020.

115.    First Draw PPP loan applications required applicants to certify to the following:

I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from the SBA is punishable under the law, including under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

116. Within First Draw PPP loan applications, applicants were asked to mark Yes or No in response to the following question 3.

Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business? If yes, list all such businesses and describe the relationship on a separate sheet identified as addendum A.

117. Addendum A was supposed to include all other businesses with common management and ownership, i.e., affiliated entities. Common management and ownership are defined in federal regulations 13 C.F.R. §§ 121.103(e) and 121.301(f). If one or more officers, directors, managing members or general partners of a business controls the Board of Directors or the management of another business, the businesses are affiliated. 13 C.F.R. § 121.103(e). Common ownership can be established in a number of ways. This includes owning more than 50% of multiple businesses or owning 20% or more of a business when owning more than 50% of another business in the same 3-digit North American Industry Classification System subsector. 13 C.F.R. § 121.301(f). Either common management or ownership is sufficient on their own to establish affiliation. Specific rules for calculating the number of employees are also set forth in 13 C.F.R. § 121.106. 13 C.F.R. § 121.106.

118. The CARES Act and federal regulations further specify that applicants were only eligible for First Draw PPP loans if affiliated entities had under 500 employees, met a pertinent industry size standard, or met the alternative size standard. Defendant dealerships were mostly new car dealerships and thus the pertinent industry size standard for affiliated entity applicants was the industry size standard for new car dealerships. At the time of application, the industry size standard for new car dealerships was having less than 200 employees which does not

1   provide any additional flexibility for PPP eligibility. U.S. Small Business Administration, Table

2   of Small Business Size Standards, North American Industry Classification System Subsector

3   441110 (August 2019).[1] The alternative size standard required both not having more than $5

4   million in average net income after Federal income taxes (excluding any carry-over losses) for

5   the two preceding full fiscal years and not having more than $15 million in tangible net worth. If

6   an applicant had either more than $5 million in average net income after Federal income taxes

7   (excluding any carry-over losses) for the two preceding full fiscal years or more than $15 million

8   in tangible net worth, the applicant was not eligible under the alternative size standard. U.S.

9   Small Business Administration, "Paycheck Protection Program Loans Frequently Asked

10  Questions (FAQs)," Answer 2 (April 6, 2020) (pertaining to 13 C.F.R. § 121.301(b)).

11      119.    First Draw PPP loan applications required the applicant to identify whether it was

12  a franchise listed on the SBA Franchise Directory. Being listed on the SBA Franchise Directory

13  meant that the SBA had reviewed the relevant franchise agreement and determined that the

14  franchisor and franchisee were sufficiently independent, so that they were not deemed affiliates

15  of each other for purposes of determining the applicant's eligibility for a small business loan. *See*

16  U.S. Small Business Administration, "The SBA Franchise Directory Simplifies Processes to

17  Help Entrepreneurs Access Capital" (2018) (explaining the purpose of the SBA Franchise

18  Directory and steps to get on the Directory including emailing the SBA a franchise agreement).

19  Prior to the COVID-19 pandemic, if a small business loan applicant's franchisor was already

20  listed on the SBA Franchise Directory, then the applicant was not required to re-submit the

21  franchise agreement for full analysis of the franchisor-franchisee relationship. Rather, the

22  applicant would merely complete SBA Form 2462 Addendum to Franchise Agreement, in which

23  it confirmed that the franchise relationship would not change for the duration of the loan term.

24

_____

25  [1] At the time of application, the used car dealership industry size standard was $27 million of annual
    receipts. U.S. Small Business Administration, Table of Small Business Size Standards, North American
26  Industry Classification System Subsector 441120 (August 2019). Even if this industry size standard was
    applied, Napleton Auto Group and affiliated entities' annual receipts exceeded $27 million. Applicants
27  also included a management office and marketing firm which had industry size standards that would not
    have made either of these types of entities eligible.

28

*See* SBA Form 2462 (2018).[2] The SBA Form 2462 addendum made clear that it "only addresses 'affiliation' between the Franchisor and [Franchisee]. Additionally, the applicant [Franchisee] … must meet all SBA eligibility requirements." *Id*. To expedite the application process for PPP loans, the CARES Act further streamlined the franchisor-franchisee affiliation analysis by waiving the SBA Form 2462 Addendum requirement for franchises on the SBA Franchise Directory. 15 U.S.C. 636(a)(36)(D)(iv)(II) (waiving "applicable" franchise affiliation in the operative regulatory section).

120.    For example, Mercedes-Benz being listed on the SBA Franchise Directory meant that the SBA had reviewed Mercedes-Benz franchise agreements with dealerships, and determined that Mercedes Benz dealerships were sufficiently independent of Mercedes-Benz, so that Mercedes-Benz's employees, assets, and profits were not imputed to dealerships for purposes of determining whether a dealership met the size limits for a small business loan. When a dealership applied for a small business loan prior to the COVID-19 pandemic, it was required to complete SBA Form 2462 Addendum confirming that the dealership would remain sufficiently independent of Mercedes-Benz for the duration of the loan term. When the dealership applied for a PPP loan, the CARES Act franchise affiliation waiver meant that the dealership was not required to complete SBA Form 2462 Addendum, as Mercedes-Benz's inclusion on the SBA Franchise Directory was considered sufficient for purposes of determining no affiliation between the dealership and Mercedes-Benz.

121.    First Draw PPP loan applications also include the following certification:

> Current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant.

122.    Government guidance stated, "Borrowers must make this certification in good

---

[2] By contrast, if a small business loan applicant operated as a franchisee but was not on the SBA Franchise Directory, then it had to provide full documentation including its franchise agreement for the SBA to review. If the SBA determined that the franchisor dominated the franchisee through ownership or control, then the franchisee would be considered an affiliate of the franchisor unless substantial revisions were made to the franchise agreement.

FIRST AMENDED COMPLAINT

faith, taking into account their current business activity and their ability to access other sources of liquidity sufficient to support their ongoing operations in a manner that is not significantly detrimental to the business." U.S. Small Business Administration, "Paycheck Protection Program Loans Frequently Asked Questions (FAQs)," Answer 31 (April 23, 2020).

123. Businesses that are "part of a single corporate group shall in no event receive more than $20,000,000 of PPP loans in the aggregate. For purposes of this limit, businesses are part of a single corporate group if they are majority owned, directly or indirectly, by a common parent. This limitation shall be immediately effective with respect to any loan that has not yet been fully disbursed as of April 30, 2020 (footnotes omitted)." "*For loans that have been partially disbursed, this limitation applies to any additional disbursement that would cause the total PPP loans to a single corporate group to exceed $20 million.*" U.S. Small Business Administration, Interim Rule, "Business Loan Program Temporary Changes; Paycheck Protection Program-Requirements-Corporate Groups and Non-Bank and Non-Insured Depository Institution Lenders" (2020).

124. First Draw PPP loan applications also required applicants to certify that they were "not engaged in any activity that is illegal under federal, state or local law."

125. First Draw PPP loan applications prohibited violations of the Equal Credit Opportunity Act, stating the following:

> **Equal Credit Opportunity Act (15 U.S.C. 1691)** – Creditors are prohibited from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status or age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act.

126. First Draw PPP loan applicants also required applicants to certify that "I will comply, whenever applicable, with the civil rights and other limitations in this form."

127. First Draw PPP loan applications prohibited racial discrimination in any form, stating the following:

**Civil Rights (13 C.F.R. 112, 113, 117)** – All businesses receiving SBA financial assistance must agree not to discriminate in any business practice, including employment practices and services to the public on the basis of categories cited in 13 C.F.R., Parts 112, 113, and 117 of SBA regulations. All borrowers must display the "Equal Employment Opportunity Poster" prescribed by SBA.

128.    Lenders received a loan processing fee when processing a First Draw PPP loan. The loan processing fee varied depending on the size of the PPP loan. Before December 27, 2020, the loan processing fee for a loan of no more than $350,000 was 5% of the loan amount, the loan processing fee for loans of more than $350,000 and less than $2,000,000 was 3% of the loan amount, and the loan processing fee for a loan of at least $2,000,000 was 1% of the loan amount. Nevertheless, lenders were not responsible for statements made in PPP loan applications; this was the responsibility of applicants. During the PPP loan application process, lenders neither provided PPP applications to the government nor informed the government of loan proceed disbursement dates.

129.    When applying for forgiveness for a First Draw PPP loan, applicants had to certify that PPP loan proceeds were used for eligible purposes and certify that information provided in all supporting documents and forms was true and correct in all material respects.

130.    Entities were able to apply for additional PPP loans (i.e., second draw PPP loans) in 2021.

131.    Similar to First Draw PPP loan applications, Second Draw PPP loan applications also required applicants to certify to the following:

> I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from the SBA is punishable under the law, including under 18 U.S.C. 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 U.S.C. 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 U.S.C. 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

132.    Similar to First Draw PPP loan applications, within Second Draw PPP loan

applications, Second Draw PPP loan applicants were asked to mark Yes or No in response to the following question 3.

> Is the Applicant or any owner of the Applicant an owner of any other business, or have common management (including a management agreement) with any other business? If yes, list all such businesses (including their TINs if available) and describe the relationship on a separate sheet identified as addendum A.

133.    Addendum A was supposed to include all other businesses with common management and ownership, i.e., affiliated entities. Common management and ownership are defined in federal regulations 13 C.F.R. §§ 121.103(e) and 121.301(f). If one or more officers, directors, managing members or general partners of a business controls the Board of Directors or the management of another business, the businesses are affiliated. 13 C.F.R. § 121.103(e). Common ownership can be established in a number of ways. This includes owning more than 50% of multiple businesses or owning 20% or more of a business when owning more than 50% of another business in the same 3-digit North American Industry Classification System subsector. 13 C.F.R. § 121.301(f). Either common management or ownership is sufficient on their own to establish affiliation. Specific rules for calculating the number of employees are in 13 C.F.R. § 121.106. 13 C.F.R. § 121.106.

134.    The Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act and federal regulations further specify that applicants were only eligible for Second Draw PPP loans if affiliated entities had under 300 employees, with limited exception. Unlike with the First Draw PPP loans, Second Draw applicants were not eligible simply because they met a pertinent industry size standard or the alternative size standard. The Second Draw PPP loan application makes this abundantly clear in the application itself, stating the following in bold:

> **Number of Employees (including affiliates, if applicable; may not exceed 300 unless "per location" exception applies):**

The applicant must list the number of employees, including affiliates. Moreover, the applicant must later certify to meeting this eligibility criteria.

135.    Second Draw PPP loan applications required the applicant to identify whether it

was a franchise listed on the SBA Franchise Directory. Being listed on the SBA Franchise Directory meant that the SBA had reviewed the relevant franchise agreement and determined that the franchisor and franchisee were sufficiently independent, so that they were not considered affiliates of each other for purposes of determining eligibility for a small business loan. *See* U.S. Small Business Administration, "The SBA Franchise Directory Simplifies Processes to Help Entrepreneurs Access Capital" (2018) (explaining the purpose of the SBA Franchise Directory and steps to get on the Directory including emailing the SBA a franchise agreement). Prior to the COVID-19 pandemic, if a small business loan applicant's franchisor was already listed on the SBA Franchise Directory, then the applicant was not required to re-submit the franchise agreement for full analysis of the franchisor-franchisee relationship. Rather, the applicant would complete SBA Form 2462 Addendum to Franchise Agreement, in which it confirmed that the franchise relationship would not change for the duration of the loan term. *See* SBA Form 2462 (2018).[3] The SBA Form 2462 addendum made clear that it "only addresses 'affiliation' between the Franchisor and [Franchisee]. Additionally, the applicant [Franchisee] … must meet all SBA eligibility requirements." *Id*. To expedite the application process for PPP loans, the CARES Act further streamlined the franchisor-franchisee affiliation analysis by waiving the SBA Form 2462 Addendum requirement for franchises on the SBA Franchise Directory. 15 U.S.C. 636(a)(36)(D)(iv)(II) (waiving "applicable" franchise affiliation in the operative regulatory section).

136.  For example, Mercedes-Benz being listed on the SBA Franchise Directory meant that the SBA had reviewed Mercedes-Benz franchise agreements with dealerships, and determined that Mercedes Benz dealerships were sufficiently independent of Mercedes-Benz, so that Mercedes-Benz's employees, assets, and profits were not imputed to dealerships for

---

[3] By contrast, if a small business loan applicant operated as a franchisee but was not on the SBA Franchise Directory, then it had to provide full information including its franchise agreement for the SBA to review. If the SBA determined that the franchisor dominated the franchisee through ownership or control, then the franchisee would be considered an affiliate of the franchisor unless substantial revisions were made to the franchise agreement.

purposes of determining whether a dealership met the size limits for a small business loan. When a dealership applied for a small business loan prior to the COVID-19 pandemic, it was required to complete SBA Form 2462 Addendum confirming that the dealership would remain sufficiently independent of Mercedes-Benz for the duration of the loan term. When the dealership applied for a PPP loan, the CARES Act franchise affiliation waiver meant that the dealership was not required to complete SBA Form 2462 Addendum, as Mercedes-Benz's inclusion on the SBA Franchise Directory was considered sufficient for purposes of determining no affiliation between the dealership and Mercedes-Benz.

137. As with First Draw PPP loan applications, Second Draw PPP loan applications also include the following certification:

> Current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant.

138. Government guidance stated, "Borrowers must make this certification in good faith, taking into account their current business activity and their ability to access other sources of liquidity sufficient to support their ongoing operations in a manner that is not significantly detrimental to the business." U.S. Small Business Administration, "Paycheck Protection Program Loans Frequently Asked Questions (FAQs)," Answer 31 (April 23, 2020).

139. For Second Draw PPP loan applications, applicants must also make the following additional certification.

> The Applicant has realized a reduction in gross receipts in excess of 25% relative to the relevant comparison time period. For loans greater than $150,000, Applicant has provided documentation to the lender substantiating the decline in gross receipts. For loans of $150,000 or less, Applicant will provide documentation substantiating the decline in gross receipts upon or before seeking loan forgives for the Second Draw Paycheck Protection Program Loan or upon SBA request.

The analysis of a reduction in gross receipts must be made across all affiliated entities.

140. Second Draw PPP loan applications also required applicants to certify that they were "not engaged in any activity that is illegal under federal, state or local law."

141. Second Draw PPP loan applications prohibited violations of the Equal Credit

Opportunity Act, stating the following:

> **Equal Credit Opportunity Act (15 U.S.C. 1691)** – Creditors are prohibited from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status or age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act.

142. Second Draw PPP loan applicants also required applicants to certify that "I will comply, whenever applicable, with the civil rights and other limitations in this form."

143. Second Draw PPP loan applications prohibited racial discrimination in any form, stating the following:

> **Civil Rights (13 C.F.R. 112, 113, 117)** – All businesses receiving SBA financial assistance must agree not to discriminate in any business practice, including employment practices and services to the public on the basis of categories cited in 13 C.F.R., Parts 112, 113, and 117 of SBA regulations. All borrowers must display the "Equal Employment Opportunity Poster" prescribed by SBA.

144. For Second Draw PPP loan applications, entities that were part of a single corporate group were also not allowed to collectively receive more than $4 million of loans. U.S. Small Business Administration, "Business Loan Program Temporary Changes; Paycheck Protection Program Second Draw Loans" (2021).

145. Lenders received a loan processing fee when processing a Second Draw PPP loan. The loan processing fee varied depending on the size of the PPP loan. The loan processing fee for a loan of no more than $350,000 was 5% of the loan amount and the loan processing fee for a loan of more than $350,000 was 3% of the loan amount. Nevertheless, lenders were not responsible for statements made in PPP loan applications; this was the responsibility of the applicants. During the PPP loan application process, lenders neither provided PPP applications to the government nor informed the government of loan proceed disbursement dates.

146. When applying for forgiveness for a Second Draw PPP loan, applicants had to certify that PPP loan proceeds were used for eligible purposes and certify that information

provided in all supporting documents and forms is true and correct in all material respects.

## VI. PPP APPLICATION FRAUDS

147. Through multiple lenders, dozens of dealerships amongst Napleton Auto Group applied for First Draw PPP loans. Among other reasons, these defendant dealerships were not eligible for First Draw PPP loans because affiliated entities (including those that applied for PPP loans and those that did not apply for PPP loans) collectively had too many employees, held interests in real estate and automobiles worth hundreds of millions of dollars, and generated too much income. *See* Crexi (2025) and PropertyShark (2024-2025). Affiliated entities of Napleton Auto Group listed 3,556 employees across their First Draw PPP applications and those applications did not include employee numbers for other dealerships. Moreover, affiliated entities of Napleton Auto Group exceeded the $20 million hard cap for PPP loans. In addition, affiliated entities of Napleton Auto Group were not eligible for First Draw PPP loans because of their repeated illegal sales practices that were taking place contemporaneously with their PPP loan borrowing.

148. Through multiple lenders, at least 8 dealerships amongst Napleton Auto Group applied for Second Draw PPP loans. Among other reasons, these defendant dealerships were not eligible for Second Draw PPP loans because affiliated entities of Napleton Auto Group (including those that applied for PPP loans and those that did not apply for PPP loans) collectively had more than 300 employees. Affiliated entities of Napleton Auto Group listed 335 employees across Second Draw PPP applications and those applications did not include employee numbers for dozens of additional Napleton Auto Group dealerships. Affiliated entities of Napleton Auto Group also did not collectively suffer a sufficient decrease in gross receipts. In addition, affiliated entities of Napleton Auto Group were not eligible for Second Draw PPP loans because of their repeated illegal sales practices that were taking place contemporaneously with their PPP loan borrowing.

## A. SPECIFIC FRAUD NO. 1
### Concealing Size

149.     With respect to both First Draw PPP loans and Second Draw PPP loans, the defendant dealerships and real estate holding companies are affiliated for two distinct reasons which are each sufficient on their own to establish affiliation. First, there is common management amongst the defendant dealerships and the real estate where those dealerships operate. In particular, Edward F. Napleton and other Napleton family members oversee the operation of affiliated entities of Napleton Auto Group. Defendant dealerships use the name "Napleton Auto Group," assert as their origin story their founding in 1931 by Edward W. Napleton, and operate in such a manner that the sale of specific automobile brands does not disrupt similar brands in the same local markets.[4] Moreover, defendant dealerships share outside advisors, financial resources, and sales practices. Certain defendant dealerships share officers, managers, employees, Second, there is common ownership amongst the defendant dealerships and the real estate where those dealerships operate. In particular, Edward F. Napleton and other Napleton family members own most of the defendant dealerships and the real estate where the dealerships operate. This can be shown under 13 C.F.R. § 121.301(f). For instance, family members own more than 50% of multiple businesses or own 20% or more of a business when owning more than 50% of another business in the new car dealership subsector. To find affiliation it is not necessary to show that all entities are part of the same official corporate structure, so affiliation can still be shown with real estate holding companies even if they hold

---

[4] A website for the Eward F. Napleton-led automobile dealerships has "Napleton Auto Group" at the top right in large font and states "Eward W. Napleton, opened his first automotive business in 1931 on Chicago's South Side." *See* https://www.napleton.com/about.php (last visited August 24, 2025); A website for the Paul R. Napleton-led automobile dealerships has "Napleton Auto Group" throughout and states, "From 1931, when Edward W. Napleton opened a small Desoto dealership on the south side of Chicago, to more than 60 Napleton Auto Group dealerships our family owns today …" *See* https://www.shopnapleton.com/about-us/ (last visited August 24, 2025); A website for the Stephen R. Napleton-led automobile dealerships states "We're pleased to welcome you to the Napleton Auto Group … From 1931, when Edward W. Napleton opened a small Desoto dealership on the south side of Chicago, to the more than 60 Napleton Auto Group dealerships our family owns today …" *See* https://www.stevenapleton.com/about-us/ (last visited August 24, 2025).

1   property outside the official Napleton Auto Group corporate structure. *See* Illinois Secretary of

2   State (2024 and 2025), Indiana Secretary of State (2024), Minnesota Secretary of State (2024),

3   Missouri Secretary of State (2024), Pennsylvania Secretary of State (2024), Wisconsin

4   Department of Financial Institutions (2024), and Florida Secretary of State (2024 and 2025),

5   Georgia Secretary of State (2024), Title Documents (2020), Crexi (2025), and PropertyShark

6   (2024). This is detailed in the below tables, which are supported by documentation in Exhibit B.[5]

7        150.     With large groups, such as Napleton Auto Group, the applicants clearly exceed

8   employee count maximums for First Draw PPP loans and Second Draw PPP loans. Thus, the

9   determination of size eligibility thus rests on whether the applicants were eligible under the

10  alternative size standard. However, the applications that defendant dealerships provided to

11  lenders included materially false statements including their certification that they were eligible

12  for PPP loans and any Addendum A did not identify all affiliated entities. In doing so,

13  Defendants did not reveal key information such as affiliated real estate holding companies and

14  the value of property held by the holding companies which would have clearly indicated that

15  Defendants were not eligible under the alternative size standards. Any lender that saw the full

16  extent of the property held by affiliated real estate holding companies, would have known that

17  Defendants were ineligible for PPP loans, but this was not provided to them by Defendants.

18       151.     To facilitate their disclosing key information in connection with their PPP

19  applications, Defendants made materially false statements about the scope of a franchise

20  affiliation waiver, which did not in fact excuse Defendants from the relevant SBA size rules. The

21  franchise affiliation waiver only provided a limited waiver of documentation requirements

22  concerning the relationship between a franchisee and its franchisor. Specifically, prior to the

23  COVID-19 pandemic, small business loan applicants operating as a franchise listed on the SBA

24

25

26  [5] The CARES Act specifically discusses applicants with more than one physical location in a subsection
    titled "BUSINESS CONCERNS WITH MORE THAN 1 PHYSICAL LOCATION." In doing so, the
    CARES Act provides a per location exception specifically for the hospitality sector which is repeated in
27  PPP applications. Neither this subsection nor PPP applications state that there is a per location exception
    for the automobile dealership sector, directly or indirectly.

28

Franchise Directory were required to submit SBA Form 2462 Addendum to Franchise Agreement with their SBA Franchise Directory-listed franchisor. *See* SBA Form 2462 (2018). In the SBA Form 2462 Addendum, the applicant confirmed that the franchisor-franchisee relationship—which the SBA had already reviewed by virtue of listing the franchise on the SBA Franchise Director—would not change for the duration of the loan term. The SBA Form 2462 addendum made clear that it "only addresses 'affiliation' between the Franchisor and [Franchisee]. Additionally, the applicant [Franchisee] … must meet all SBA eligibility requirements." To expedite the application process for PPP loans, the CARES Act waived the "applicable" franchise affiliation in 13 C.F.R. § 121.103 which concerned such franchisee-franchisor affiliation through franchise agreements. *See* 13 C.F.R. § 121.103(i) (discussing "*Affiliation based on franchise and license agreements*"); U.S. Small Business Administration, "SBA Form 2462, Addendum to Franchise Agreement" (stating "A franchisor and franchisee must use this form when a franchisee applies for SBA-assisted financing."), https://www.sba.gov/document/sba-form-2462-addendum-franchise-agreement (last visited August 8, 2025). As Defendants already knew that the franchise affiliation waiver waived the need to complete a franchise agreement addendum, asserting that the franchise affiliation waiver did far more than this, and extended beyond the franchisee-franchisor relationship, at least constituted reckless disregard of the truth or falsity of the information, especially when Defendants knew lenders were not responsible for the accuracy of applicants' statements. Moreover, any specific representation that a waiver of 13 C.F.R. § 121.103 waived all affiliation rules outside the franchisee-franchisor context was on its face materially false.

152.     *Submission of False Claim & False Statement in Support of False Claim.* For all their PPP loans, Defendants submitted false claims and made false statements in support of these claims when they applied for PPP loans certifying that they were eligible for PPP loans and submitted PPP forgiveness applications certifying that loan proceeds were used for eligible purposes. Defendants' claims were false because Defendants did not meet the size eligibility criteria for PPP loans, and thus were not eligible for PPP loans. The loans proceeds were not

used for eligible purposes because Defendants were not eligible for PPP loans. Defendants' claims were supported by additional false statements, including false statements about their employee counts which did not account for affiliated entities, and false statements in connection with the addenda to their loan applications. All defendant dealerships were ineligible for obtaining PPP loans under each relevant size eligibility criteria. Defendants had too many employees to qualify for First Draw PPP loans under the 500 maximum employee cap and the pertinent industry standard 200 employee cap, and they had too many employees to qualify for Second Draw PPP loans under the 300 maximum employee cap. Defendants did not qualify for First Draw PPP loans under the alternative size standard because they had more than $15 million of tangible net worth, and average net income after federal incomes taxes (excluding carry-over losses) of more than $5 million for two full fiscal years prior to the application date of their First Draw PPP loans.[6] These false claims and statements were material, as Defendants would not have received the loans or forgiveness for the loans without these false claims and statements. Because of these false claims and false statements, the government was damaged in the total amount of all forgiven PPP loan proceeds equaling at least $44,246,337[7] and loan processing fees for all PPP loans equaling approximately $1,609,814 for all PPP loans. Defendants knew that they did not meet the size eligibility for PPP loans, and thus did not qualify for the PPP loans. At a minimum, Defendants acted with reckless disregard of the truth or falsity of the information in their PPP loan applications by not providing accurate comprehensive information and instead taking efforts that failed to provide appropriate transparency. Thus, there are facts showing causes of action for both a submission of a false claim and a false statement in support of a false claim.

153. *Conspiracy to Violate the False Claims Act.* For all their First Draw PPP loans, all

---

[6] Even if these numbers are calculated separately for Eward F. Napleton-led automobile dealerships, they are all exceeded. Likewise, even if these numbers are calculated separately for Paul R. Napleton-led automobile dealerships, they are all exceeded. Again, likewise, even if these numbers are calculated separately for Stephen R. Napleton-led automobile dealerships, they are all exceeded.

[7] There are several million dollars more of loan proceeds where Exemption 4 is listed for the forgiveness status of the connected PPP loans.

Defendants (including Defendant real estate holding companies) had an agreement to defraud the government by getting their false claims paid. This conspiracy involved failing to provide complete and accurate information to the government. Had Defendants provided complete and accurate information to government, Defendants would not have received First Draw PPP loans or received forgiveness for these PPP loans because it would have been clear that Defendants did not qualify for PPP loans under any of the First Draw size eligibility criteria, including the alternative size standard. Defendants possessed requisite scienter for the reasons stated above. The government was damaged in the total amount of all forgiven First Draw PPP loan proceeds equaling at least approximately \$40,322,173[8] and loan processing fees for all First Draw PPP loans equaling an estimated approximately \$1,475,386. Thus, there are facts showing a conspiracy to violate the False Claims Act.

**Table 2: Defendant Dealerships' Common Management and Ownership**

| Defendant | Address | Management and Ownership |
|---|---|---|
| Napleton's Arlington Heights Motors, Inc. (dba Napleton's Arlington Heights Chrysler Dodge Jeep RAM) | 1155 W Dundee Rd, Arlington Heights, IL | Manager: Edward F. Napleton |
| Ed Napleton Elmhurst Imports, Inc. (dba Ed Napleton Acura) | 745 West Lake St, Elmhurst, IL | President: Edward F. Napleton<br>Secretary: Katherine Napleton |
| Ed Napleton Westmont Imports, Inc. (dba Ed Napleton Westmont Porsche) | 201 E Ogden Ave, Westmont, IL* | President: Edward F. Napleton<br>Secretary: Katherine Napleton |
| Napleton's Autowerks, Inc. (dba Loves Park Mercedes) | 6600 E Riverside Blvd, Loves Park, IL* | President: William Napleton<br>Secretary: Paul Napleton |
| Napleton's River Oaks Motors, Inc. (dba Napleton's River Oaks Chrysler Dodge Jeep RAM) | 17225 Torrence Ave, Lansing, IL* | President: Edward F. Napleton<br>Secretary: Brian Napleton |
| Ed Napleton Calumet City Imports, Inc. (dba Napleton | 1985 River Oaks Dr, Calumet City, IL | President: Edward F. Napleton<br>Secretary: Katherine |

---

[8] There are several million dollars more of loan proceeds where Exemption 4 is listed for the forgiveness status of the connected PPP loans.

| Defendant | Address | Management and Ownership |
|---|---|---|
| River Oaks Hyundai) | | Napleton |
| Napleton Automotive of Urbana, LLC (dba Genesis of Urbana, Napleton's Auto Park of Urbana, Napleton's Urbana Mitsubishi, Napleton's Hyundai of Urbana, Napleton's Kia of Urbana, Napleton's Mazda of Urbana, Napleton's Volkswagen of Urbana) | 1111 Napleton Way, Urbana, IL[*] | Manager: Edward F. Napleton |
| Napleton's Schaumburg Pontiac-GMC Inc. (dba Napleton's Schaumburg Buick GMC) | 100 W Golf Rd, Schaumburg, IL[*] | President: Stephen R. Napleton |
| Napleton Motor Corp. (dba Napleton Subaru, Porsche Rockford) | 505 N. Perryville Rd, Rockford, IL[*] | President: William F. Napleton Secretary: Paul Napleton |
| Napleton Urbana Imports LLC (dba Napleton's Auto Park of Urbana, Napleton's Toyota of Urbana, Napleton's Scion of Urbana) | 1111 Napleton Way, Urbana, IL[*] | Manager: Edward F. Napleton |
| Napleton's Park Ridge Lincoln Inc. (dba Napleton Lincoln) | 1610 Waukegan Rd, Glenview, IL | President: William F. Napleton Secretary: Lauren Napleton |
| Napleton's River Oaks Cadillac, Inc. (dba Napleton's River Oaks Cadillac) | 1777 River Oaks Dr, Calumet City, IL[*] | President: Paul Napleton Secretary: William Napleton |
| Napleton's Schaumburg Subaru, Inc. (dba Napleton's Schaumburg Subaru) | 919 W Higgins Rd, Schaumburg, IL | President: Christopher J. Napleton Secretary: Erin Conway |
| Napleton's Countryside Motors, Inc. (dba Napleton's Countryside Mazda) | 6060 S La Grange Rd, Countryside, IL | President: Stephen R. Napleton Secretary: Erin Conway |
| Napleton Schaumburg Motors, Inc. (dba Napleton's Schaumburg Mazda) | 110 W Golf Rd, Schaumburg, IL | President: Stephen R. Napleton |
| Napleton Libertyville, Inc. (dba Napleton Mazda of Libertyville) | 1120 S Milwaukee Ave, Libertyville, IL[*] | Director: William F. Napleton |
| Napleton's Autowerks of Bourbonnais, Inc. (dba Mercedes-Benz of | 515 Latham Dr, Bourbonnais, IL | President: Paul Napleton |

FIRST AMENDED COMPLAINT

| Defendant | Address | Management and Ownership |
|---|---|---|
| Bourbonnais) | | |
| Napleton's Palatine Motors Holding, Inc. (dba Napleton's Palatine Mazda) | 1811 N Rand Rd, Palatine, IL | President: Matthew Napleton Secretary: Erin Conway |
| Fran Napleton Lincoln, Inc. (dba Napleton Lincoln of Blue Island) | 2950 W 127th St, Blue Island, IL | President: Paul Napleton Secretary: Kathleen A. Napleton |
| Ed Napleton Oak Lawn Imports, Inc. (dba Ed Napleton Honda in Oak Lawn) | 5800 W 95th St Oak, Lawn, IL | President: Edward F. Napleton |
| Napleton Aurora Imports, Inc. (dba Napleton's Valley Hyundai) | 4333 Ogden Ave, Aurora, IL[*] | President: Edward F. Napleton |
| Napleton's Goldcoast Imports, Inc. (dba Napleton's Aston Martin Downers Grove, Napleton Maserati Downers Grove) | 217 Ogden Ave, Downers Grove, IL[*] | President: Edward F. Napleton |
| Steve Foley Cadillac, Inc. | 100 Skokie Rd, Northbrook, IL[*] | President: William F. Napleton |
| Napleton 1050, Inc. (dba Napleton Cadillac of Libertyville) | 1050 S Milwaukee Ave, Libertyville, IL[*] | President: William F. Napleton Secretary: Paul Napleton |
| Napleton 6677, Inc. (dba Land Rover Rockford, Jaguar Rockford) | 6677 E Riverside Blvd, Rockford, IL[*] | Directors: William F. Napleton, Paul Napleton |
| Napleton Fleet, Inc. (dba Napleton Fleet Group) | 1 Oakbrook Terrace #515, Oakbrook Terrace, IL | President: Edward F. Napleton Secretary: Katherine Napleton |
| North American Automotive Services, Inc. (dba Cash4Techs) | 1 Oakbrook Terrace #600, Oakbrook Terrace, IL | President: Edward F. Napleton |
| Oak Hill Marketing | 1 Oakbrook Terrace #700, Oakbrook Terrace, IL | President: Edward F. Napleton Secretary: Brian Napleton |
| Sessler Ford, Inc. (dba Napleton Ford in Libertyville) | 1010 S Milwaukee Ave, Libertyville, IL[*] | President: William Napleton Secretary: Mary Napleton |
| Napleton Carmel Motors, LLC (dba Napleton Hyundai of Carmel) | 4200 E 96th St, Indianapolis, IN | Manager: Edward F. Napleton |
| Napleton's Autowerks of Indiana, Inc. (dba Napleton Schererville Mercedes) | 1349 Indianapolis Blvd, Schererville, IN | President: William Napleton Vice President: Paul Napleton |

| Defendant | Address | Management and Ownership |
|---|---|---|
| Napleton Fishers Imports, LLC (dba Napleton Kia of Fishers) | 13417 Britton Park Rd, Fishers, IN* | Manager: Edward F. Napleton |
| Napleton Carmel Imports, LLC (dba Napleton Kia of Carmel) | 3355 Harper Rd, Indianapolis, IN | Manager: Edward F. Napleton |
| Napleton 1301, Inc. (dba Napleton Nissan Schererville) | 1301 Indianapolis Blvd, Schererville, IN | President: Bridget Napleton Legal Representative: Maureen Napleton |
| Napleton Italian Imports, LLC (dba Napleton Maserati of Indianapolis, Napleton Alfa Romeo of Indianapolis) | 4180 E 96th St, Indianapolis, IN* | Manager: Edward F. Napleton |
| Napleton Twin Cities Imports, LLC (dba Lexus of Wayzata) | 16100 Wayzata Blvd, Wayzata, MN* | Manager: Edward F. Napleton |
| Napleton Wayzata Motors, LLC (dba Chevrolet of Wayzata) | 16200 Wayzata Blvd, Wayzata, MN* | Manager: Edward F. Napleton |
| Napleton Rochester Imports, LLC (dba Mercedes-Benz of Rochester) | 4447 Canal PL SE, Rochester, MN* | Manager: Edward F. Napleton |
| Ed Napleton St. Louis Imports, Inc. (dba Ed Napleton Honda St Peters) | 4780 N Service Rd, Saint Peters, MO* | President and Director: Edward F. Napleton Secretary: Katherine Napleton |
| Napleton's Mid Rivers Motors, Inc. (dba Napleton's Mid Rivers Chrysler Dodge Jeep RAM Fiat) | 4951 Veterans Memorial Parkway, Saint Peters, MO* | President and Director: Edward F. Napleton |
| Napleton Hazelwood Imports, LLC (dba Napleton Hyundai) | 649 Dunn St, Hazelwood, MO* | Manager: Edward F. Napleton |
| Napleton Mid Rivers Imports, Inc. (dba Napleton's Mid Rivers Kia) | 4955 Veterans Memorial Parkway, Saint Peters, MO | President and Director: Edward F. Napleton |
| Napleton St. Louis Imports, LLC (dba Napleton St Louis Nissan) | 10964 Page Avenue, St Louis, MO* | Manager: Edward F. Napleton |
| Napleton Autowerks Missouri, Inc. (dba Porsche Springfield) | 3508 E. Division St, Springfield, MO* | President and Director: Paul R. Napleton |
| Napleton Wyoming Valley Imports, Inc. (dba Wyoming Valley BMW, Audi Wyoming | 1470 Highway 315, Wilkes Berre, PA | Manager: Edward F. Napleton |

| Defendant | Address | Management and Ownership |
|---|---|---|
| Valley, Subaru Wyoming Valley) | | |
| Napleton's Ellwood Motors, Inc. (dba Napleton Ellwood City Chrysler Dodge Jeep RAM) | 1000 Lawrence Ave, Ellwood City, PA | President:  Edward F. Napleton |
| Napleton Brookfield Imports, LLC (dba Toyota of Brookfield) | 20655 W Capitol Dr, Brookfield, WI[*] | Manager:  Edward F. Napleton |
| Napleton Bluemound Imports, LLC (dba Lexus of Brookfield) | 20001 W Bluemound Rd, Brookfield, WI[*] | Manager:  Edward F. Napleton |
| Napleton Autowerks Wisconsin, Inc. (dba Napleton Chevrolet Columbus) | 800 Maple Ave, Columbus, WI[*] | Legal Representative: Maureen Napleton |
| Napleton's North Palm Auto Park, Inc. (dba Napleton's Northlake Chrysler Dodge Jeep RAM) | 3701 Northlake Blvd, Lake Park, FL[*] | President:  Edward F. Napleton Secretary:  Brian Napleton |
| Napleton Enterprises, LLC (dba Napleton Kissimmee Chrysler Dodge Jeep RAM) | 1460 E Osceola Parkway, Kissimmee, FL[*] | Manager:  Edward F. Napleton Secretary:  Brian Napleton |
| Napleton's Palm Beach Imports, LLC (dba Napleton's Palm Beach Acura) | 6870 Okeechobee Blvd, West Palm Beach, FL[*] | Manager:  Edward F. Napleton Secretary:  Brian Napleton |
| Napleton Orlando Imports, LLC (dba Napleton's Volkswagen of Orlando) | 12700 E Colonial Dr, Orlando, FL[*] | Manager:  Edward F. Napleton |
| Napleton Sanford Imports, LLC (dba Napleton's Volkswagen of Sanford) | 4175 S Orlando Dr, Sanford, FL[*] | Manager:  Edward F. Napleton |
| North Palm Motors, LLC (dba Napleton Northlake Kia) | 3626 Northlake Blvd, Palm Beach Gardens, FL | Manager:  Edward F. Napleton |
| EFN West Palm Motor Sales, LLC (dba Napleton's West Palm Beach Genesis) | 2301 Okeechobee Blvd, West Palm Beach, FL[*] | Manager:  Edward F. Napleton |
| North Palm Hyundai, LLC (dba Napleton's North Palm Hyundai) | 3703 Northlake Blvd, Palm Beach Gables, FL | Manager:  Edward F. Napleton |
| Clermont Motors, LLC (dba Napleton Clermont Chrysler | 15859 State Rd 50, Clermont, FL[*] | Manager:  Edward F. Napleton |

[*] This property is owned by the Napleton Auto Group. *See* Table 2: Defendants' Real Estate Holdings.

| Defendant | Address | Management and Ownership |
|---|---|---|
| Jeep Dodge RAM) | | |
| Augusta Imports, LLC (dba Napleton Infiniti of Augusta) | 3315 Washington Rd, Augusta, GA | Manager: Edward F. Napleton |
| Macon Imports, LLC (dba Infiniti of Macon) | 4763 Riverside Dr, Macon, GA | Manager: Edward F. Napleton |

**Table 3: Defendants' Real Estate Holdings**

| Defendant | Management and Control | Real Estate Owned | Real Estate Reported Value |
|---|---|---|---|
| Napleton's North Palm Auto Park, Inc. | Edward F. Napleton Brian Napleton Katherine Napleton Bruce Etheridge | 3701 Northlake Blvd, Lake Park, FL | $11,311,896.00 |
| Napleton Enterprises, LLC | Edward F. Napleton Brian Napleton Bruce Etheridge | 1460 E Osceola Parkway, Kissimmee, FL | $4,225,400.00 |
| Napleton's Palm Beach Imports, LLC | Edward F. Napleton Brian Napleton | 6870 Okeechobee Blvd, West Palm Beach, FL | $13,352.582.00 |
| Napleton Orlando Imports, LLC | Edward F. Napleton | 12700 E Colonial Dr, Orlando, FL | $4,680,920.00 |
| Clermont Motors LLC | Edward F. Napleton | 15859 State Rd 50, Clermont, FL | $8,762,367.00 |
| Napleton Sanford Imports LLC | Edward F. Napleton | 4175 S Orlando Dr, Sanford, FL | $1,450,000.00 |
| EFN West Palm Motor Sales LLC | Edward F. Napleton | 2301 Okeechobee Blvd, West Palm Beach, FL | $8,788,312.00 |
| EFN Westmont Real Estate Holdings, LLC | Edward F. Napleton | 201 E Ogden Ave, Westmont, IL | $8,538,720.00 |
| Napleton Properties, LLC fka Napleton's Rockford Properties LLC | Paul Napleton William Napleton | 6600 E Riverside Blvd, Loves Park, IL<br><br>505 N Perryville Rd, Rockford, IL<br><br>100 Skokie Rd, Northbrook, IL<br><br>1050 S Milwaukee Ave, Libertyville, IL | 6600 E Riverside Blvd, Loves Park, IL: $3,988,230.00<br><br>505 N Perryville Rd, Rockford, IL: $3,531,540.00 |

| Defendant | Management and Control | Real Estate Owned | Real Estate Reported Value |
|---|---|---|---|
| | | 6677 E Riverside Blvd, Rockford, IL | 100 Skokie Rd, Northbrook, IL: $7,200,000.00

1050 S Milwaukee Ave, Libertyville, IL: $4,400,000.00

6677 E Riverside Blvd, Rockford, IL: $1,722,330.00 |
| EFN Lansing Property LLC | Edward F. Napleton | 17225 Torrence Ave, Lansing, IL | $2,163,575.00 |
| EFN Urbana Properties LLC | Edward F. Napleton | 1111 Napleton Way, Urbana, IL | $4,698,210.00 |
| 100 West Golf, LLC | Stephen R. Napleton | 100 W Golf Rd, Schaumburg, IL | $5,000,000.00 |
| Sedgley Partners, LLC | William F. Napleton | 1010 S Milwaukee Ave, Libertyville, IL

1120 S Milwaukee Ave, Libertyville, IL | $3,889,372 |
| Napleton Investment Partnership LP | Edward F. Napleton | 745 W Lake St, Elmhurst, IL | $1,649,595.00 |
| EFN Downers Grove Property LLC | Edward F. Napleton | 217 Ogden Ave, Downers Grove, IL | $428,256.00 |
| EFN Aurora Property LLC | Edward F. Napleton | 4333 Ogden Ave, Aurora, IL | $6,781,869.00 |
| Napleton's River Oaks Cadillac, Inc. | Paul Napleton William Napleton | 1777 River Oaks Dr, Calumet City, IL | $233,320 |
| EFN Carmel Properties, LLC | Edward F. Napleton | 4200 E 96th St, Indianapolis, IN | $6,074,300.00 |
| EFN Fishers Properties, LLC | Edward F. Napleton | 13417 Britton Park Rd, Fishers, IN | $2,856,900.00 |
| EFN Import Properties, LLC | Edward F. Napleton | 4180 E 96th St, Indianapolis, IN | $2,581,000.00 |
| EFN Wayzata Properties, LLC | Edward F. Napleton | 16100 Wayzata Blvd, Wayzata, MN

16200 Wayzata Blvd, Wayzata, MN | 16100 Wayzata Blvd, Wayzata, MN: $13,700,000.00

16200 Wayzata Blvd, Wayzata, |

FIRST AMENDED COMPLAINT

| Defendant | Management and Control | Real Estate Owned | Real Estate Reported Value |
|---|---|---|---|
| | | | MN: $5,686,000.00 |
| EFN Rochester Properties LLC | Edward F. Napleton | 4447 Canal PL SE, Rochester, MN | $2,673,800.00 |
| EFN St Peters Property II LLC | Edward F. Napleton | 4780 N Service Rd, Saint Peters, MO | $1,080,713.00 |
| EFN 4951 Executive Centre Property LLC | Edward F. Napleton | 4951 Veterans Memorial Pkwy, Saint Peters, MO | $3,497,639.00 |
| EFN St Louis Property LLC | Edward F. Napleton | 10964 Page Ave, Saint Louis, MO | $6,436,500.00 |
| Napleton Equities LLC | Paul Napleton | 3508 E Division St, Springfield, MO | $203,520.00 |
| EFN Hazelwood Properties LLC | Edward F. Napleton | 649 Dunn St, Hazelwood, MO | $5,310,000.00 |
| EFN Wyoming Valley Properties LLC | Edward F. Napleton | 1470 Highway 315 Wilkes Berre PA | $7,600,000.00 |
| EFN Ellwood Property LLC | Napleton Investment Partnership LP | 1000 Lawrence Ave, Ellwood City, PA | $332,000.00 |
| EFN Brookfield Property LLC | Edward F. Napleton | 20655 W Capitol Dr, Brookfield, WI | $14,952,300.00 |
| EFN Bluemound Property, LLC | Edward F. Napleton | 20001 W Bluemound Rd, Brookfield, WI | $6,269,500.00 |

**Total Property Value: Over $174 Million**

**B. SPECIFIC FRAUD NO. 2**
**Exceeding $20 Million Cap**

154.    Defendants far exceeded the $20 million cap on PPP loans for a single corporate group. All defendant dealerships operate under the Napleton Auto Group umbrella and market the same origin story. Thus, Napleton Auto Group qualifies as a common parent under the U.S. Small Business Administration, Interim Rule, "Business Loan Program Temporary Changes; Paycheck Protection Program-Requirements-Corporate Groups and Non-Bank and Non-Insured Depository Institution Lenders." In the alternative, a common parent can otherwise be established directly or indirectly for defendant dealerships. At a minimum, defendant dealerships

exceeded the $20 million PPP loan cap when obtaining Second Draw PPP loans for the following dealerships: Napleton's Schaumburg Pontiac-GMC Inc., Napleton Urbana Imports LLC, Napleton's Park Ridge Lincoln Inc., Napleton's Schaumburg Subaru Inc., Napleton Libertyville, Inc., Napleton 1301 Inc, and Macon Imports, LLC. The exact amount of Defendants' First Draw PPP loans that were fully disbursed as of April 30, 2020 is currently not ascertainable because only borrowers and lenders possess information identifying which loan proceeds were disbursed after the Interim Rule became effective. However, all of Defendants' First Draw PPP loans were approved within days or weeks of when the Interim Rule became effective, making it highly improbable that any of the PPP loans could have had certain loan proceeds disbursed after that time. Thus, as much as $26,768,746 of the $46,768,746 First Draw PPP loan proceeds exceeded the $20 million cap. All of the $3,924,164 Second Draw PPP loan proceeds also exceeded the cap because all the loan proceeds were disbursed after the effective date of the Interim Rule.

155.    To exceed the $20 million PPP loan cap, defendant dealerships shopped lenders to process their PPP loan applications, and they never fully identified the scope of affiliated entities through an Addendum A. In total, defendant dealerships obtained PPP loans from at least eight different lenders. Defendant dealerships also applied for PPP loans with additional lenders and said lenders rejected any applications. In certain instances, defendant dealerships also switched lenders between First Draw PPP loans and Second Draw PPP loans. Napleton Urbana Imports LLC obtained a First Draw PPP loan from BMO Bank National Association and obtained a Second Draw PPP loan from Old National Bank. Napleton 1301 Inc obtained a First Draw PPP loan from JPMorgan Chase Bank, National Association and obtained a Second Draw PPP loan from The Leaders Bank. Macon Imports, LLC obtained a First Draw PPP loan from JPMorgan Chase Bank, National Association and obtained a Second Draw PPP loan from First Midwest Bank, A Division of Old National Bank. In doing so, defendant dealerships presented an incomplete picture of their total borrowing. Lenders were thus unaware that the $20 million PPP loan cap was being exceeded when they processed or distributed loans.

156.     Later, defendant dealerships sought forgiveness for most of their PPP loans. However, for PPP loans with certain lenders, defendant dealerships either did not apply for forgiveness or receive forgiveness. Defendant dealerships did not share this information with all their lenders. Sharing this information with all their lenders would have alerted their lenders to the fact that defendant dealerships exceeded the $20 million PPP loan cap.

157.     Moreover, Defendants' collective taking of slightly under $4 million of Second Draw PPP loans – specifically $3,924,164 – was an implicit acknowledgement that defendant dealerships were part of a single corporate group. Doing so demonstrated a sophisticated knowledge of PPP loan rules and that Defendants were aware that defendant dealerships would be deemed part of a single corporate group, as Second Draw PPP loans were capped at $4 million for a single corporate group.

158.     *Submissions of False Claims & False Statements in Support of False Claims.* For all their PPP loans, Defendants submitted false claims and made false statements in support of these claims when they applied for Second Draw PPP loans certifying that they were eligible for Second Draw PPP loans and submitted Second Draw PPP forgiveness applications certifying that loan proceeds were used for eligible purposes. The claims were false because Defendants exceeded $20 million PPP loan cap, and thus were not eligible for Second Draw PPP loans. The loan proceeds were not used for eligible purposes because Defendants were not eligible purposes because Defendants were not eligible for PPP loans because they had already exceeded the $20 million PPP loan cap. The claims were supported by additional false statements which are detailed above. When Defendants sought Second Draw PPP loans, they had already exceeded the $20 million PPP loan cap. This was material as Defendants were not allowed to receive any Second Draw PPP loans since they had already exceeded the $20 million PPP loan cap. Because of Defendants' false claims and false statements, the government was damaged in the amount of $3,924,164 in forgiven loan proceeds for Second Draw PPP loans and an estimated approximately $134,428 in loan processing fees for these Second Draw PPP loans. Defendants' shopping of lenders and not sharing complete information with these lenders evidences

Defendants' scienter when seeking the loans. Different loan repayment statuses also evidence scienter, as Defendants were attempting to hide their exceeding of the $20 million cap through after the fact loan negotiations with specific lenders, especially where this information was not fully shared with all lenders. Defendants knew that they exceeded the $20 million PPP loan cap. At a minimum, Defendants acted with reckless disregard of the truth or falsity of the information in their PPP loan applications by not providing accurate comprehensive information and instead taking efforts that failed to provide appropriate transparency. Thus, there are facts showing causes of action for both a submission of a false claim and a false statement in support of a false claim.

159. *Avoidance of Obligation to Pay Government.* For certain First Draw PPP loan proceeds, Defendants incurred an obligation to pay the government when they received PPP loan proceeds in exceed of $20 million. Not returning the loan proceeds in excess of the $20 million cap was material as it directly damaged the government. The government was damaged by as much as $26,768,746 of First Draw PPP loan proceeds and estimated loan processing fees of approximately $1,475,386 for all First Draw PPP loans. At a minimum, Defendants acted with reckless disregard of the truth or falsity of the information in their PPP loan applications by not providing accurate comprehensive information and instead taking efforts that failed to provide appropriate transparency. Thus, there are facts showing a cause of action for avoidance of an obligation to pay the government.

### C. SPECIFIC FRAUD NO. 3
### Misrepresenting Reduction in Gross Receipts

160. To be eligible for Second Draw PPP loans, applicants must experience a greater than 25% reduction in gross receipts across all affiliated entities. Defendant dealerships misrepresented the reduction in their gross receipts with their Second Draw PPP loan applications. They sought PPP loans for select dealerships in a manner that disguised profits obtained by their highest earning dealerships. Defendant dealerships also did not identify other sources of income, such as rent received from property held in real estate holding companies. By

1  not disclosing and including all affiliated entities with their Second Draw PPP loan applications,

2  defendants submitted false claims. Applying with only a select subset of dealerships also made it

3  impossible for lenders to assess whether affiliated entities suffered the sufficient reduction in

4  gross receipts required for Second Draw PPP loan eligibility. Analyzing a reduction in gross

5  receipts must be done across all affiliated entities, which was impossible with the incomplete and

6  inaccurate information that defendant dealerships provided.

7  161.    Defendant dealerships were also required to provide documentation substantiating

8  a sufficient decline in gross receipts before seeking loan forgiveness for Second Draw PPP loans.

9  Providing such information was a substantive term of Second Draw PPP loan agreements.

10  However, defendant dealerships could not provide such information because they did not suffer a

11  sufficient reduction in gross receipts across affiliated entities.

12  162.    Defendant dealerships were guilty of false claims when they submitted PPP loans

13  in their Second Draw PPP loan application and submitted Second Draw PPP loan forgiveness

14  applications. Defendant dealerships did not suffer a sufficient reduction in gross receipts.

15  Defendant dealerships' Second Draw PPP loan applications contained materially false statements

16  including their certification that they were eligible for PPP loans and any addendum or lack

17  thereof that did not identify all affiliated entities. Forgiveness applications included materially

18  false statements such as a certification that loan proceeds were used for eligible purposes. Any

19  documentation substantiating a sufficient decline in gross receipts that only included a subset of

20  borrower information was also a materially false statement. Moreover, Defendants demonstrated

21  scienter in their PPP loan applications through the selective submissions of defendant dealerships

22  that applied for Second Draw PPP loan applications, versus the broader set of defendant

23  dealerships that applied for First Draw PPP loan applications. Furthermore, Defendants'

24  collective taking of just under $4 million of Second Draw PPP loans – specifically $3,924,164 –

25  demonstrated a sophisticated knowledge of PPP loan rules as Second Draw PPP loans were

26  capped at $4 million for a single corporate group.

27  163.    *Submissions of False Claims & False Statements in Support of False Claim.* For

28

all their Second Draw PPP loans, Defendants submitted false claims and made false statements in support of these claims when they applied for Second Draw PPP loans certifying that they were eligible for Second Draw PPP loans and submitted Second Draw PPP forgiveness applications certifying that loan proceeds were used for eligible purposes. Applications were also supported by a false certification that Defendants experienced a reduction in gross receipts exceeding 25%. The claims and statements were false because Defendants misrepresented the reduction in their gross receipts, and thus were not eligible for PPP loans. The PPP loan proceeds were not used for eligible purposes because Defendants were never eligible for PPP loans. Defendants did not experience a reduction in gross receipts exceeding 25% across all affiliated entities. The claims were supported by additional false statements, including false statements in connection with any Addendum A. All Defendants were ineligible for Second Draw PPP loans. The information was false for the reasons articulated above. The information was material for the reasons stated above. If accurate comprehensive information was provided, Defendants would not have received Second Draw PPP loans. The government was damaged in the total amount of all forgiven Second Draw PPP loan proceeds equaling at least $3,924,164 and loan processing fees for all Second Draw PPP loans equaling an estimated approximately $134,428. Defendants knew that they did not experience a sufficient reduction in gross receipts to qualify for PPP loans. At a minimum, Defendants acted with reckless disregard of the truth or falsity of the information in their PPP loan applications by not providing accurate comprehensive information and instead taking efforts that failed to provide appropriate transparency. Thus, there are facts showing causes of action for both a submission of a false claim and a false statement in support of a false claim.

164.     *Conspiracy to Violate the False Claims Act.* For all Second Draw PPP loan, all Defendants (including the Defendant real estate holding companies) had an agreement to defraud the government by getting their false claims paid. This involved failing to provide complete and accurate information to the government regarding Defendants' gross receipts. Without complete and accurate information, it was impossible to assess whether Defendants experienced a

1  reduction in gross receipts exceeding 25% across all affiliated entities. Had Defendants provided

2  complete and accurate information to government regarding their gross receipts, Defendants

3  would not have received Second Draw PPP loans or received forgiveness for these PPP loans.

4  Defendants possessed requisite scienter for the reasons stated above. The government was

5  damaged in the total amount of all forgiven Second Draw PPP loan proceeds equaling at least

6  $3,924,164 and loan processing fees for all Second Draw PPP loans equaling an estimated

7  approximately $134,428. Thus, there are facts showing a conspiracy to violate the False Claims

8  Act.

### D. SPECIFIC FRAUD NO. 4
**Misrepresenting Financial Necessity**

11  165.    At all relevant times defendant dealerships had abundant financial resources

12  which disqualified them from obtaining PPP loans. For instance, Defendant dealerships had

13  access to the equity of the real estate held by affiliated real estate holding companies. This real

14  estate is worth well over $174 million. Nevertheless, in PPP loan applications, defendant

15  dealerships did not identify the affiliated real estate holding companies. Nor did defendants

16  identify their group-wide cash reserves, cash equivalent investments, valuable vehicles in their

17  dealerships, and other cash and non-cash investments. Defendants were not in a time of financial

18  need when they borrowed PPP loans. Rather, Defendants were immensely profitable and

19  growing throughout the relevant period. During the time period that Defendants borrowed PPP

20  loans, their sales and revenue steadily increased and their ranking among the largest automobile

21  dealerships nationwide stayed high. Defendants even acquired additional automobile dealerships

22  during the relevant period.

23  166.    Because defendant dealerships did not sufficiently identify affiliated real estate

24  holding companies and their other significant group-wide financial resources, it was impossible

25  for lenders to appropriately assess the financial needs of defendant dealerships. Defendants' PPP

26  applications were false claims which included false statements, including a certification that

27  Defendants were eligible for PPP loans, a certification that they needed the PPP loan funds, and

28

the failure to identify all affiliated entities. In making these claims, Defendants concealed material information, such as affiliated real estate holding companies and the value of property held by the holding companies. Any lender would have been able to have seen that defendant dealerships lacked sufficient financial necessity because of the value of the property held in the real estate holding companies and defendants' other significant financial resources.

167.    Defendants did not have a financial necessity for PPP loans, and Defendants knew this at all times. Thus, Defendants could not make a financial necessity certification in good faith, taking into account their current business activity and their ability to access other sources of liquidity sufficient to support their ongoing operations in a manner that is not significantly detrimental to the business. Likewise, submitting a PPP loan forgiveness applications certifying that all PPP loan proceeds were used for eligible purposes was false, being further shaded by the additional time where the Napleton Auto Group experienced increasing revenue and bought more dealerships.

168.    *Submissions of False Claims & False Statements in Support of False Claims.* For all PPP loans, Defendants submitted false claims and made false statements in support of these claims when they applied for PPP loans certifying that they were eligible for PPP loans and submitted PPP forgiveness applications certifying that loan proceeds were used for eligible purposes. The claims were false because Defendants did not have a financial necessity for PPP loans, and thus were not eligible for PPP loans. The loan proceeds were not used for eligible purposes as Defendants were not eligible for PPP loans. The claims were supported by additional false statements, including financial necessity certifications and false statements in connection with any Addendum A. The claims were false because Defendants did not need the PPP loans to operate their businesses in a manner that was not significantly detrimental to their business, taking into account their current business activity and their ability to access other sources of liquidity sufficient to support their ongoing operations. The false claims and false statements were material because Defendants would not have received the PPP loans and forgiveness for the PPP loans without these false claims and false statements. Defendants would not have received

the PPP loans if they provided complete and accurate information with their loan applications, and the government would not have been damaged if Defendants did not submit PPP loans certifying that they were eligible for PPP loans and submit PPP applications certifying that loan proceeds were used for forgiveness applications. The government was damaged in the total amount of all forgiven PPP loan proceeds equaling at least approximately $44,246,337 and loan processing fees for all PPP loans equaling an estimated approximately $1,609,814 for all PPP loans. Defendants knew that they did not have a financial necessity for PPP loans. At a minimum, Defendants acted with reckless disregard of the truth or falsity of the information in their PPP applications by not providing accurate comprehensive information and instead taking efforts that failed to provide appropriate transparency. Thus, there are facts showing causes of action for both a submission of a false claim and a false statement in support of a false claim.

169.    *Conspiracy to Violate the False Claims Act.* For all PPP loans, all Defendants (including the Defendant real estate holding companies) had an agreement to defraud the government by getting their false claims paid. This involving failing to provide accurate transparent information to the government. Had Defendants provided accurate transparent information to government, Defendants would not have received PPP loans or received forgiveness for these PPP loans as Defendants would have revealed that they had access to significant liquidity in property held by affiliated real estate holding companies. Defendants possessed requisite scienter for the reasons stated above. The government was damaged in the total amount of all forgiven PPP loan proceeds equaling at least approximately $44,246,337 and loan processing fees for all PPP loans equaling an estimated approximately $1,609,814 for all PPP loans. Thus, there are facts showing a conspiracy to violate the False Claims Act.

### E. SPECIFIC FRAUD NO. 5
### Concealing and Continuing Illegal Sales Practices

170.    Contemporaneous with their applications for PPP loans, the Napleton Auto Group was engaged in illegal conduct that disqualified them from obtaining PPP loans. This illegal conduct included, but was not limited to, illegal sales practices by the defendant dealerships.

These illegal sales practices involved including unauthorized and deceptive add-on charges in vehicle sales contracts, charging consumers add-on charges without consumer consent, and claiming that the add-on charges were mandatory. The conduct involved defendant dealerships that ultimately reached a government settlement[9] as well as defendant dealerships who were not listed in the settlement. These illegal sales practices were widespread within the Napleton Auto Group. Relator requested consumer complaints made to the State of Illinois from 2017 to 2022 and was informed that it had "identified over 400 consumer complaints against the indicated company that are categorized as related to automobile sales … it would take over 100 hours to compile and review the responsive records." Office of the Attorney General FOIA Response Letter (2025). *See* Exhibit C. All defendant dealerships were either directly or indirectly involved with these illegal sales practices. All individual defendants knew about the illegal conduct and each of the individual defendants was in a position to either stop these illegal practices or report them. Each of the individual defendants benefited financially either directly or indirectly by not stopping or reporting these illegal practices. Thus, each borrower defendant submitted a false claim by submitting a PPP loan and false statements when certifying that they were not involved in illegal conduct.

171.     From the time of their application for PPP loans to the time of their seeking forgiveness for PPP loans, defendant dealership owners and managers knew that illegal sales practices were widespread within the Napleton Auto Group. Napleton Auto Group dealerships charged thousands of consumers hundreds to thousands of dollars each through illegal add-on charges. This amounted to millions of dollars of illegal charges from 2017 to 2022. Moreover, on average, Black and Latino customers had more add-on charges. In analyzing racial disparity, the government stated that racial disparity was "statistically significant and cannot be explained by factors related to underwriting risk or credit characteristics of the applicants." *See* Federal Trade

---

[9] Defendant dealerships that signed the settlement with the Federal Trade Commission and State of Illinois include Napleton's Arlington Heights Motors, Inc., Ed Napleton Elmhurst Imports, Inc., Napleton's North Palm Auto Park, Inc., Napleton Enterprises, LLC, Clermont Motors, LLC, North Palm Motors, LLC, Napleton's Ellwood Motors, Inc., and Napleton Mid Rivers Imports, Inc.

Commission and State of Illinois Complaint Against Napleton Auto Group (2022). Customers regularly complained about these practices. However, owners and managers did nothing to change these practices until they were pursued by the Federal Trade Commission and State of Illinois. Napleton Auto Group ownership and management approved sales contracts. Napleton Auto Group ownership and management approved marketing materials. Napleton Auto Group ownership and management were regularly made aware of disputes with customers over their sales practices. In fact, it has been reported that a sales representative explained that these illegal sales practices were simply "the Napelton way." Edmunds (2025).

172.    Customer complaints of these illegal sales practices show that the conduct took place at dealerships that ultimately reached a settlement with the Federal Trade Commission and State of Illinois as well as dealerships that were not part of the settlement. On January 9, 2020, a customer explained that they had the following experience at Napleton's Arlington Heights Chrysler Dodge Jeep RAM, "they scammed me. they advertised dodge charger 2020 from 41k reduced to 33k. I signed every paper work and brought the car back from the dealer and noticed they put 39k in my sales contract." Edmunds (2025). On July 31, 2020, a customer said that at Napleton's Schaumburg Buick GMC they were told that it was practice to add a $750 "re-conditioning" fee to the advertised price. Edmunds (2025). On August 8, 2020, a customer explained that Napleton Lincoln uses "fake &misleading advertisements &they try to hustle you when you are buying!" Cars.com (2025). On January 15, 2021, a customer described their experience at Napleton River Oaks Hyundai as follows, "they have no ethics, they are false, abusive, deceptive, and advantageous … they make hidden and misleading charges." (translated from Spanish). Cars.com (2025). On May 28, 2021, a customer described their experience at Napleton Ford Libertyville as follows, "Terrible waste of time, lock in price prior to visit that claimed was good for 7 days then tried to upcharge 5k when arrived a couple hours later… Stay away!!" DealerRater (2025). On June 4, 2021, a customer described their experience at Napleton's Auto Park of Urbana as follows, "Wow be VERY VERY CAREFUL. I GOT WHAT I THOUGHT WAS A GOOD PRICE BUT THEY SNUCK IN OVER 5000.00 WORTH OF

EXTRas very sneaky." DealerRater (2025).

173.    These illegal sales practices were taking place across the country in the many states where Napleton Auto Group operated. On April 22, 2019, a customer described their experience at Napleton Chevrolet Columbus in Wisconsin as follows, "They will charge you more than the advertised price and then argue with you about how it was a mistake. Your dishonesty is the worst I've ever dealt with. Trying to charge me more than your advertised price is ILLEGAL!!!" Cars.com (2025). On July 14, 2020, a customer described their experience at Napleton's Northlake Chrysler Dodge Jeep RAM in Florida as follows, "over *6000* in hidden fees … We've dealt with some dishonest dealers in looking nationwide for a car, but this one's the worst … The car was listed at cars.com for 14k, but by the time they finish tacking on fees, it was over 20k. Seriously. The person on the phone eventually admitted that they 'build those fees into the price." Cars.com (2025). On August 12, 2020, a customer described their experience at Ed Napleton Honda St Peters in Missouri as follows, "Horrible Bait and Switch from beginning to end! … Total scammers. Complete bait and switch! They clearly advertised a price on CarGurus and their own website and tried to charge me $4000 more. After my test drive, I told them that I was really interested. The salesman said he would be right back and that he would see if he could get me an even better deal. He returns in 10 minutes with a handwritten price sheet which included which included $4000 in additional mandatory charges. I was like What?!? The sales manager came out as well and they both said that they show those prices online to get people in the door." Cars.com (2025). On January 1, 2021, a customer described their experience at Napleton Kia of Fishers in Indiana as follows, "Went in to look at a car with grandmother who is on a fixed income. We looked online and found a car that she liked. Unfortunately the internet price is just to lure you in. By the time we walked away, the price was $1500 more than the price online (excluding tax and title that we expected)." Cars.com (2025). Documentation showing consumer complaints is included in Exhibit D.

174.    When Napleton Auto Group dealerships applied for loans, they specifically certified that they were not committing illegal conduct. They were further specifically informed

in the PPP applications that as a condition of the PPP loans, they were prohibited from violating the United States Equal Credit Opportunity Act and Civil Rights laws. Thus, Defendants cannot assert that they did not have knowledge that these violations disqualified them from receiving PPP loans. Yet, from the time that they applied for PPP loans to the time that they sought forgiveness for these loans, Napleton Auto Group dealerships were systematically violating the United States Equal Credit Opportunity Act and Civil Rights laws, in addition to the Federal Trade Commission Act, the Truth in Lending Act, and the Illinois Consumer Fraud and Deceptive Business Practices Act. These laws prohibit unfair and deceptive acts or practices in commerce, require honest and accurate lending disclosures, and prohibit discrimination. Equal Credit Opportunity Act, 15 U.S.C. § 1691; Civil Rights, 13 C.F.R. §§ 112, 113, 117; Federal Trade Commission Act, 15 U.S.C. §§ 53, 57; Truth in Lending Act, 15 U.S.C. §§ 1601-66; Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 501/1 *et seq.* None of which were abided by the Napleton Auto Group dealerships while they contemporaneously applied for PPP loans and sought forgiveness for these loans.

175. Defendant dealerships submitted false claims when they applied for PPP loans and applied for forgiveness for PPP loans. Defendant dealerships should not have received any PPP loans because they were engaged in conduct where they violated the law and racially discriminated against customers. Defendants received PPP loans because they made materially false statements including certifying that they did not violate the law, certifying that they did not engage in illegal sales practices, certifying that they did not racially discriminate, and certifying that they were eligible for PPP loans. Defendants received loan forgiveness for PPP loans because they made materially false statements about using PPP loans for eligible purposes, when they were committing the exact conduct that was specifically prohibited by the PPP loan application they signed, i.e., violations of the United States Equal Credit Opportunity Act and Civil Rights laws. Defendants were also violating the Federal Trade Commission Act, the Truth in Lending Act, and the Illinois Consumer Fraud and Deceptive Business Practices Act. Defendants did not disclose these illegal sales practices and certified that they did not violate the

1  law. For the above reasons, at all times Defendants possessed the necessary scienter, knowingly

2  directly or indirectly participating in practices that were specifically prohibited under the PPP

3  loan applications that they signed. The false claims and false statements were material.

4      176.    *Submissions of False Claims & False Statements in Support of False Claims*. For

5  all PPP loans, Defendants submitted false claims and made false statements in support of these

6  claims when they applied for PPP loans certifying that they were eligible for PPP loans and

7  submitted PPP forgiveness applications certifying that loan proceeds were used for eligible

8  purposes. The claims were false because Defendants were engaged in illegal sales practices that

9  disqualified them from obtaining PPP loans. The loan proceeds were not used for eligible

10  purposes as Defendants were not eligible for PPP loans. The claims were supported by additional

11  false statements, including false statements about not being engaged in practices that violate the

12  law or civil rights. Defendants were, however, violating the law and civil rights through their

13  sales practices which included unauthorized and deceptive add-on charges in vehicle sales

14  contracts, charging consumers add-on charges without consumer consent, and claiming that the

15  add-on charges were mandatory. Doing so violated the United States Equal Credit Opportunity

16  Act and Civil Rights laws which were specifically prohibited by PPP applications themselves.

17  Doing so also violated the Federal Trade Commission Act, Truth in Lending Act, and the Illinois

18  Consumer Fraud and Deceptive Business Practices Act. For these reasons, Defendants would not

19  have been approved for PPP loans if not for these false statements and the government would not

20  have been damaged if not for the submission PPP applications and forgiveness applications for

21  said loans. With hundreds of consumer complaints, consumers specifically stating that the sales

22  practices were illegal, and Defendants own employees referring to these illegal practices as "the

23  Napelton way," Defendants were aware of the widespread illegal practices taking place within

24  the Napleton Auto Group and that these practices made them ineligible for PPP loans given that

25  the PPP loans specifically prohibited such practices. Because of Defendants' false claims and

26  false statements, the government was damaged in the total amount of the forgiven PPP loan

27  proceeds equaling at least approximately $44,246,337 for all PPP loans and the full amount of

28

the loan processing fees equaling an estimated approximately $1,609,814. Defendants knew that they were engaged in illegal sales practices that disqualified them from obtaining PPP loans. At a minimum, Defendants acted with reckless disregard of the truth or falsity of the information in their PPP loan applications, in applying for PPP loans and seeking forgiveness for PPP loans under these circumstances while making all the above-described certifications. Thus, there are facts showing causes of action for both a submission of a false claim and a false statement in support of a false claim.

## VII. PPP APPLICATIONS

177.    Defendant Napleton's Arlington Heights Motors, Inc. doing business as Napleton's Arlington Heights Chrysler Dodge Jeep RAM applied for a First Draw PPP loan in the amount of $1,575,815 with JPMorgan Chase Bank, National Association which was approved on April 10, 2020. Loan processing fees are estimated at approximately $47,274. Napleton's Arlington Heights Motors, Inc. received forgiveness for the First Draw PPP loan. However, in its PPP application, Napleton's Arlington Heights Motors, Inc. did not identify all affiliated entities or otherwise accurately represent the number of employees, tangible net worth, income, or financial need of all affiliated entities.

178.    Defendant Ed Napleton Elmhurst Imports, Inc. doing business as Ed Napleton Acura applied for a First Draw PPP loan in the amount of $1,415,837 with JPMorgan Chase Bank, National Association which was approved on April 9, 2020. Loan processing fees are estimated at approximately $42,475. Ed Napleton Elmhurst Imports, Inc. received forgiveness for the First Draw PPP loan. However, in its PPP application, Ed Napleton Elmhurst Imports, Inc. did not identify all affiliated entities or otherwise accurately represent the number of employees, tangible net worth, income, or financial need of all affiliated entities.

179.    Defendant Ed Napleton Westmont Imports, Inc. doing business as Ed Napleton Westmont Porsche applied for a First Draw PPP loan in the amount of $1,145,200 with BMO Bank National Association which was approved on April 10, 2020. Loan processing fees are estimated at approximately $34,356. Ed Napleton Westmont Imports, Inc. received forgiveness

for the First Draw PPP loan. However, in its PPP application, Ed Napleton Westmont Imports, Inc. did not identify all affiliated entities or otherwise accurately represent the number of employees, tangible net worth, income, or financial need of all affiliated entities.

180.     Defendant Napleton's Autowerks, Inc. doing business as Loves Park Mercedes applied for a First Draw PPP loan in the amount of $1,046,975 with JPMorgan Chase Bank, National Association which was approved on April 10, 2020. Loan processing fees are estimated at approximately $31,409. Napleton's Autowerks, Inc. received forgiveness for the First Draw PPP loan. However, in its PPP application, Napleton's Autowerks, Inc. did not identify all affiliated entities or otherwise accurately represent the number of employees, tangible net worth, income, or financial need of all affiliated entities.

181.     Defendant Napleton's River Oaks Motors, Inc. doing business as Napleton's River Oaks Chrysler Dodge Jeep RAM applied for a First Draw PPP loan in the amount of $1,015,247.50 with Old National Bank which was approved on April 6, 2020. Loan processing fees are estimated at approximately $30, 457. Napleton's River Oaks Motors, Inc. received forgiveness for the First Draw PPP loan. However, in its PPP application, Napleton's River Oaks Motors, Inc. did not identify all affiliated entities or otherwise accurately represent the number of employees, tangible net worth, income, or financial need of all affiliated entities.

182.     Defendant Ed Napleton Calumet City Imports, Inc. doing business as Napleton River Oaks Hyundai applied for a First Draw PPP loan in the amount of $915,710 with Old National Bank which was approved on April 6, 2020. Loan processing fees are estimated at approximately $27, 471. Ed Napleton Calumet City Imports, Inc. received forgiveness for the First Draw PPP loan. However, in its PPP application, Ed Napleton Calumet City Imports, Inc. did not identify all affiliated entities or otherwise accurately represent the number of employees, tangible net worth, income, or financial need of all affiliated entities.

183.     Defendant Napleton Automotive of Urbana, LLC doing business as Genesis of Urbana, Napleton's Auto Park of Urbana, Napleton's Urbana Mitsubishi, Napleton's Hyundai of Urbana, Napleton's Kia of Urbana, Napleton's Mazda of Urbana, Napleton's Volkswagen of

1  Urbana applied for a First Draw PPP loan in the amount of $892,000 with BMO Bank National

2  Association which was approved on April 10, 2020. Loan processing fees are estimated at

3  approximately $26,760. Napleton Automotive of Urbana, LLC received forgiveness for the First

4  Draw PPP loan. However, in its PPP application, Napleton Automotive of Urbana, LLC did not

5  identify all affiliated entities or otherwise accurately represent the number of employees, tangible

6  net worth, income, or financial need of all affiliated entities.

7          184.    Defendant Napleton's Schaumburg Pontiac-GMC Inc. doing business as

8  Napleton's Schaumburg Buick GMC applied for a First Draw PPP loan in the amount of

9  $808,022 with JPMorgan Chase Bank, National Association which was approved on April 10,

10  2020 and a Second Draw PPP loan in the amount of $642,542 with JPMorgan Chase Bank,

11  National Association which was approved on March 30, 2021. Loan processing fees are

12  estimated at approximately $24,240 and approximately $19,276, respectively. Napleton's

13  Schaumburg Pontiac-GMC Inc. received forgiveness for both the First Draw PPP loan and

14  Second Draw PPP loan. However, in its PPP applications, Napleton's Schaumburg Pontiac-GMC

15  Inc. did not identify all affiliated entities or otherwise accurately represent the number of

16  employees, tangible net worth, income, or financial need of all affiliated entities. Moreover, in

17  the Second Draw PPP loan application, Napleton's Schaumburg Pontiac-GMC Inc. did not list

18  an accurate number of employees that included employees at all affiliated entities. Applying with

19  only a select subset of dealerships also made it impossible for lenders to assess whether affiliated

20  entities suffered the sufficient reduction in gross receipts required for Second Draw PPP loan

21  eligibility.

22          185.    Napleton Motor Corp. doing business as Napleton Subaru, Porsche Rockford

23  applied for a First Draw PPP loan in the amount of $775,565 with JPMorgan Chase Bank,

24  National Association which was approved on April 10, 2020. Loan processing fees are estimated

25  at approximately $23,266. Napleton Motor Corp. received forgiveness for the First Draw PPP

26  loan. However, in its PPP application, Napleton Motor Corp. did not identify all affiliated

27  entities or otherwise accurately represent the number of employees, tangible net worth, income,

28

1  or financial need of all affiliated entities.

2       186.    Defendant Napleton Urbana Imports LLC doing business as Napleton's Auto Park

3  of Urbana, Napleton's Toyota of Urbana, Napleton's Scion of Urbana applied for a First Draw

4  PPP loan in the amount of $735,500 with BMO Bank National Association which was approved

5  on April 9, 2020 and a Second Draw PPP loan in the amount of $680,830 with Old National

6  Bank which was approved on February 2, 2021. Loan processing fees are estimated at

7  approximately $22,065 and approximately $20,424, respectively. Napleton Urbana Imports LLC

8  received forgiveness for both the First Draw PPP loan and Second Draw PPP loan. However, in

9  its PPP applications, Napleton Urbana Imports LLC did not identify all affiliated entities or

10  otherwise accurately represent the number of employees, tangible net worth, income, or financial

11  need of all affiliated entities. Moreover, in the Second Draw PPP loan application, Napleton

12  Urbana Imports LLC did not list an accurate number of employees that included employees at all

13  affiliated entities. Applying with only a select subset of dealerships also made it impossible for

14  lenders to assess whether affiliated entities suffered the sufficient reduction in gross receipts

15  required for Second Draw PPP loan eligibility.

16       187.    Defendant Napleton's Park Ridge Lincoln Inc. doing business as Napleton

17  Lincoln applied for a First Draw PPP loan in the amount of $604,407 with JPMorgan Chase

18  Bank, National Association which was approved on April 13, 2020 and a Second Draw PPP loan

19  in the amount of $607,675 with JPMorgan Chase Bank, National Association which was

20  approved on March 18, 2021. Loan processing fees are estimated at approximately $18,132 and

21  approximately $18,230, respectively. Napleton's Park Ridge Lincoln Inc. received forgiveness

22  for both the First Draw PPP loan and Second Draw PPP loan. However, in its PPP applications,

23  Napleton's Park Ridge Lincoln Inc. did not identify all affiliated entities or otherwise accurately

24  represent the number of employees, tangible net worth, income, or financial need of all affiliated

25  entities. Moreover, in the Second Draw PPP loan application, Napleton's Park Ridge Lincoln

26  Inc. did not list an accurate number of employees that included employees at all affiliated

27  entities. Applying with only a select subset of dealerships also made it impossible for lenders to

28

1  assess whether affiliated entities suffered the sufficient reduction in gross receipts required for

2  Second Draw PPP loan eligibility.

3      188.    Defendant Napleton's River Oaks Cadillac, Inc. doing business as Napleton's

4  River Oaks Cadillac applied for a First Draw PPP loan in the amount of $601,102 with

5  JPMorgan Chase Bank, National Association which was approved on April 10, 2020. Loan

6  processing fees are estimated at approximately $18,033. Napleton's River Oaks Cadillac

7  received forgiveness for the First Draw PPP loan. However, in its PPP application, Napleton's

8  River Oaks Cadillac did not identify all affiliated entities or otherwise accurately represent the

9  number of employees, tangible net worth, income, or financial need of all affiliated entities.

10      189.    Defendant Napleton's Schaumburg Subaru, Inc. doing business as Napleton's

11  Schaumburg Subaru applied for a First Draw PPP loan in the amount of $469,797 with

12  JPMorgan Chase Bank, National Association which was approved on April 10, 2020 and a

13  Second Draw PPP loan in the amount of $409,270 with JPMorgan Chase Bank, National

14  Association which was approved on April 30, 2021. Loan processing fees are estimated at

15  approximately $14,093 and approximately $12,278, respectively. Napleton's Schaumburg

16  Subaru, Inc. received forgiveness for both the First Draw PPP loan and Second Draw PPP loan.

17  However, in its PPP applications, Napleton's Schaumburg Subaru, Inc. did not identify all

18  affiliated entities or otherwise accurately represent the number of employees, tangible net worth,

19  income, or financial need of all affiliated entities. Moreover, in the Second Draw PPP loan

20  application, Napleton's Schaumburg Subaru, Inc. did not list an accurate number of employees

21  that included employees at all affiliated entities. Applying with only a select subset of

22  dealerships also made it impossible for lenders to assess whether affiliated entities suffered the

23  sufficient reduction in gross receipts required for Second Draw PPP loan eligibility.

24      190.    Defendant Napleton's Countryside Motors, Inc. doing business as Napleton's

25  Countryside Mazda applied for a First Draw PPP loan in the amount of $386,315 with JPMorgan

26  Chase Bank, National Association which was approved on April 11, 2020. Loan processing fees

27  are estimated at approximately $11,589. Napleton's Countryside Motors, Inc. received

28

forgiveness for the First Draw PPP loan. However, in its PPP application, Napleton's Countryside Motors, Inc. did not identify all affiliated entities or otherwise accurately represent the number of employees, tangible net worth, income, or financial need of all affiliated entities.

191.     Defendant Napleton Schaumburg Motors, Inc. doing business as Napleton's Schaumburg Mazda applied for a First Draw PPP loan in the amount of $336,125 with JPMorgan Chase Bank, National Association which was approved on April 10, 2020. Loan processing fees are estimated at approximately $16,806. Napleton Schaumburg Motors, Inc. received forgiveness for the First Draw PPP loan. However, in its PPP application, Napleton Schaumburg Motors, Inc. did not identify all affiliated entities or otherwise accurately represent the number of employees, tangible net worth, income, or financial need of all affiliated entities.

192.     Defendant Napleton Libertyville, Inc. doing business as Napleton Mazda of Libertyville applied for a First Draw PPP loan in the amount of $312,325 with JPMorgan Chase Bank, National Association which was approved on April 10, 2020 and a Second Draw PPP loan in the amount of $312,325 with JPMorgan Chase Bank, National Association which was approved on March 18, 2021. Loan processing fees are estimated at approximately $15,616 and approximately $15,616, respectively. Napleton Libertyville, Inc. received forgiveness for both the First Draw PPP loan and Second Draw PPP loan. However, in its PPP applications, Napleton Libertyville, Inc. did not identify all affiliated entities or otherwise accurately represent the number of employees, tangible net worth, income, or financial need of all affiliated entities. Moreover, in the Second Draw PPP loan application, Napleton Libertyville, Inc. did not list an accurate number of employees that included employees at all affiliated entities. Applying with only a select subset of dealerships also made it impossible for lenders to assess whether affiliated entities suffered the sufficient reduction in gross receipts required for Second Draw PPP loan eligibility.

193.     Defendant Napleton's Autowerks of Bourbonnais, Inc. doing business as Mercedes-Benz of Bourbonnais applied for a First Draw PPP loan in the amount of $248,000 with Peoples Bank of Kankakee County which was approved on April 4, 2020. Loan processing

fees are estimated at approximately $12,400. Napleton's Autowerks of Bourbonnais, Inc. received forgiveness for the First Draw PPP loan. However, in its PPP application, Napleton's Autowerks of Bourbonnais, Inc. did not identify all affiliated entities or otherwise accurately represent the number of employees, tangible net worth, income, or financial need of all affiliated entities.

194.    Defendant Napleton's Palatine Motors Holding, Inc. doing business as Napleton's Palatine Mazda applied for a First Draw PPP loan in the amount of $243,270 with JPMorgan Chase Bank, National Association which was approved on April 10, 2020. Loan processing fees are estimated at approximately $12,163. Napleton's Palatine Motors Holding, Inc. received forgiveness for the First Draw PPP loan. However, in its PPP application, Napleton's Palatine Motors Holding, Inc. did not identify all affiliated entities or otherwise accurately represent the number of employees, tangible net worth, income, or financial need of all affiliated entities.

195.    Defendant Fran Napleton Lincoln, Inc. doing business as Napleton Lincoln of Blue Island applied for a First Draw PPP loan in the amount of $234,300 with JPMorgan Chase Bank, National Association which was approved on April 10, 2020. Loan processing fees are estimated at approximately $11,715. Fran Napleton Lincoln, Inc. received forgiveness for the First Draw PPP loan. However, in its PPP application, Fran Napleton Lincoln, Inc. did not identify all affiliated entities or otherwise accurately represent the number of employees, tangible net worth, income, or financial need of all affiliated entities.

196.    Defendant Ed Napleton Oak Lawn Imports, Inc. doing business as Ed Napleton Honda in Oak Lawn applied for a First Draw PPP loan in the amount of $1,011,290 with First Midwest Bank, A Division of Old National Bank which was approved on April 27, 2020. Loan processing fees are estimated at approximately $30,338. The loan has Exemption 4 listed for its loan status. However, in its PPP application, Ed Napleton Honda in Oak Lawn did not identify all affiliated entities or otherwise accurately represent the number of employees, tangible net worth, income, or financial need of all affiliated entities.

197.    Defendant Napleton Aurora Imports, Inc. doing business as Napleton's Valley

Hyundai applied for a First Draw PPP loan in the amount of $1,165,377 with Toyota Financial Savings Bank which was approved on April 27, 2020. Loan processing fees are estimated at approximately $34,961. The loan has Exemption 4 listed for its loan status. However, in its PPP application, Napleton Aurora Imports, Inc. did not identify all affiliated entities or otherwise accurately represent the number of employees, tangible net worth, income, or financial need of all affiliated entities.

198.     Defendant Napleton's Goldcoast Imports, Inc. doing business as Napleton's Aston Martin Downers Grove, Napleton Maserati Downers Grove applied for a First Draw PPP loan in the amount of $447,580 with Toyota Financial Savings Bank which was approved on April 27, 2020. Loan processing fees are estimated at approximately $13,427. The loan has Exemption 4 listed for its loan status. However, in its PPP application, Napleton's Goldcoast Imports, Inc. did not identify all affiliated entities or otherwise accurately represent the number of employees, tangible net worth, income, or financial need of all affiliated entities.

199.     Defendant Steve Foley Cadillac, Inc. applied for a First Draw PPP loan in the amount of $961,132 with JPMorgan Chase Bank, National Association which was approved on April 13, 2020. Loan processing fees are estimated at approximately $28,833. Steve Foley Cadillac, Inc. received forgiveness for the First Draw PPP loan. However, in its PPP application, Steve Foley Cadillac, Inc. did not identify all affiliated entities or otherwise accurately represent the number of employees, tangible net worth, income, or financial need of all affiliated entities.

200.     Defendant Napleton 1050, Inc. doing business as Napleton Cadillac of Libertyville applied for a First Draw PPP loan in the amount of $593,422 with JPMorgan Chase Bank, National Association which was approved on April 10, 2020. Loan processing fees are estimated at approximately $17,802. Napleton 1050, Inc. received forgiveness for the First Draw PPP loan. However, in its PPP application, Napleton 1050, Inc. did not identify all affiliated entities or otherwise accurately represent the number of employees, tangible net worth, income, or financial need of all affiliated entities.

201.     Defendant Napleton 6677, Inc. doing business as Land Rover Rockford, Jaguar

1  Rockford applied for a First Draw PPP loan in the amount of $130,710 with JPMorgan Chase
2  Bank, National Association which was approved on April 10, 2020. Loan processing fees are
3  estimated at approximately $6,535. Napleton 6677, Inc. received forgiveness for the First Draw
4  PPP loan. However, in its PPP application, Napleton 6677, Inc. did not identify all affiliated
5  entities or otherwise accurately represent the number of employees, tangible net worth, income,
6  or financial need of all affiliated entities.

7       202.    Defendant Napleton Fleet, Inc. doing business as Napleton Fleet Group applied
8  for a First Draw PPP loan in the amount of $188,550 with JPMorgan Chase Bank, National
9  Association which was approved on April 10, 2020. Loan processing fees are estimated at
10 approximately $9,427. The loan has Exemption 4 listed for its loan status. However, in its PPP
11 application, Napleton Fleet, Inc. did not identify all affiliated entities or otherwise accurately
12 represent the number of employees, tangible net worth, income, or financial need of all affiliated
13 entities.

14      203.    Defendant North American Automotive Services, Inc. doing business as
15 Cash4Techs applied for a First Draw PPP loan in the amount of $1,572,102 with JPMorgan
16 Chase Bank, National Association which was approved on April 10, 2020. Loan processing fees
17 are estimated at approximately $47,163. The loan has Exemption 4 listed for its loan status.
18 However, in its PPP application, North American Automotive Services, Inc. did not identify all
19 affiliated entities or otherwise accurately represent the number of employees, tangible net worth,
20 income, or financial need of all affiliated entities.

21      204.    Defendant Oak Hill Marketing applied for a First Draw PPP loan in the amount of
22 $347,947 with JPMorgan Chase Bank, National Association which was approved on April 20,
23 2020. Loan processing fees are estimated at approximately $17,397. The loan has Exemption 4
24 listed for its loan status. However, in its PPP application, Oak Hill Marketing did not identify all
25 affiliated entities or otherwise accurately represent the number of employees, tangible net worth,
26 income, or financial need of all affiliated entities.

27      205.    Defendant Sessler Ford, Inc. doing business as Napleton Ford Libertyville applied
28

for a First Draw PPP loan in the amount of $634,675 with JPMorgan Chase Bank, National Association which was approved on April 10, 2020 and a Second Draw PPP loan in the amount of $748,662 with JPMorgan Chase Bank, National Association which was approved on March 18, 2021. Loan processing fees are estimated at approximately $19,040 and approximately $22,459, respectively. Sessler Ford, Inc. received forgiveness for both the First Draw PPP loan and Second Draw PPP loan. However, in its PPP applications, Sessler Ford, Inc. did not identify all affiliated entities or otherwise accurately represent the number of employees, tangible net worth, income, or financial need of all affiliated entities. Moreover, in the Second Draw PPP loan application, Sessler Ford, Inc. did not list an accurate number of employees that included employees at all affiliated entities. Applying with only a select subset of dealerships also made it impossible for lenders to assess whether affiliated entities suffered the sufficient reduction in gross receipts required for Second Draw PPP loan eligibility.

206. Defendant Napleton Carmel Motors, LLC doing business as Napleton Hyundai of Carmel applied for a First Draw PPP loan in the amount of $750,280 with JPMorgan Chase Bank, National Association which was approved on April 10, 2020. Loan processing fees are estimated at approximately $22,508. Napleton Hyundai of Carmel received forgiveness for the First Draw PPP loan. However, in its PPP application, Napleton Hyundai of Carmel did not identify all affiliated entities or otherwise accurately represent the number of employees, tangible net worth, income, or financial need of all affiliated entities.

207. Defendant Napleton's Autowerks of Indiana, Inc. doing business as Napleton Schererville Mercedes applied for a First Draw PPP loan in the amount of $488,810 with JPMorgan Chase Bank, National Association which was approved on April 10, 2020. Loan processing fees are estimated at approximately $14,664. Napleton's Autowerks of Indiana, Inc. received forgiveness for the First Draw PPP loan. However, in its PPP application, Napleton's Autowerks of Indiana, Inc. did not identify all affiliated entities or otherwise accurately represent the number of employees, tangible net worth, income, or financial need of all affiliated entities.

208. Defendant Napleton Fishers Imports, LLC doing business as Napleton Kia of

Fishers applied for a First Draw PPP loan in the amount of $471,902 with JPMorgan Chase Bank, National Association which was approved on April 9, 2020. Loan processing fees are estimated at approximately $14,157. Napleton Fishers Imports, LLC received forgiveness for the First Draw PPP loan. However, in its PPP application, Napleton Fishers Imports, LLC did not identify all affiliated entities or otherwise accurately represent the number of employees, tangible net worth, income, or financial need of all affiliated entities.

209.    Defendant Napleton Carmel Imports, LLC doing business as Napleton Kia of Carmel applied for a First Draw PPP loan in the amount of $356,097 with JPMorgan Chase Bank, National Association which was approved on April 9, 2020. Loan processing fees are estimated at approximately $10,682. Napleton Carmel Imports, LLC received forgiveness for the First Draw PPP loan. However, in its PPP application, Napleton Carmel Imports, LLC did not identify all affiliated entities or otherwise accurately represent the number of employees, tangible net worth, income, or financial need of all affiliated entities.

210.    Defendant Napleton 1301, Inc. doing business as Napleton Nissan Schererville applied for a First Draw PPP loan in the amount of $131,395 with JPMorgan Chase Bank, National Association which was approved on April 10, 2020 and a Second Draw PPP loan in the amount of $239,900 with The Leaders Bank which was approved on February 3, 2021. Loan processing fees are estimated at approximately $6,569 and approximately $11,995, respectively. Napleton 1301, Inc. received forgiveness for both the First Draw PPP loan and Second Draw PPP loan. However, in its PPP applications, Napleton 1301, Inc. did not identify all affiliated entities or otherwise accurately represent the number of employees, tangible net worth, income, or financial need of all affiliated entities. Moreover, in the Second Draw PPP loan application, Napleton 1301, Inc. did not list an accurate number of employees that included employees at all affiliated entities. Applying with only a select subset of dealerships also made it impossible for lenders to assess whether affiliated entities suffered the sufficient reduction in gross receipts required for Second Draw PPP loan eligibility.

211.    Defendant Napleton Italian Imports, LLC doing business as Napleton Maserati of

Indianapolis, Napleton Alfa Romeo of Indianapolis applied for a First Draw PPP loan in the amount of $173,430 with JPMorgan Chase Bank, National Association which was approved on April 13, 2020. Loan processing fees are estimated at approximately $8,671. Napleton Italian Imports, LLC received forgiveness for the First Draw PPP loan. However, in its PPP application, Napleton Italian Imports, LLC did not identify all affiliated entities or otherwise accurately represent the number of employees, tangible net worth, income, or financial need of all affiliated entities.

212.    Defendant Napleton Twin Cities Imports, LLC doing business as Lexus of Wayzata applied for a First Draw PPP loan in the amount of $3,369,123 with Toyota Financial Savings Bank which was approved on April 11, 2020. Loan processing fees are estimated at approximately $33,691. Napleton Twin Cities Imports, LLC received forgiveness for the First Draw PPP loan. However, in its PPP application, Napleton Twin Cities Imports, LLC did not identify all affiliated entities or otherwise accurately represent the number of employees, tangible net worth, income, or financial need of all affiliated entities.

213.    Defendant Napleton Wayzata Motors, LLC doing business as Chevrolet of Wayzata applied for a First Draw PPP loan in the amount of $1,306,930 with Toyota Financial Savings Bank which was approved on April 13, 2020. Loan processing fees are estimated at approximately $39,207. Napleton Wayzata Motors, LLC received forgiveness for the First Draw PPP loan. However, in its PPP application, Napleton Wayzata Motors, LLC did not identify all affiliated entities or otherwise accurately represent the number of employees, tangible net worth, income, or financial need of all affiliated entities.

214.    Defendant Napleton Rochester Imports, LLC doing business as Mercedes-Benz of Rochester applied for a First Draw PPP loan in the amount of $346,108 with Toyota Financial Savings Bank which was approved on April 11, 2020. Loan processing fees are estimated at approximately $17,305. Napleton Rochester Imports, LLC received forgiveness for the First Draw PPP loan. However, in its PPP application, Napleton Rochester Imports, LLC did not identify all affiliated entities or otherwise accurately represent the number of employees, tangible

net worth, income, or financial need of all affiliated entities.

215.     Defendant Ed Napleton St. Louis Imports, Inc. doing business as Ed Napleton Honda St Peters applied for a First Draw PPP loan in the amount of $1,056,562 with Toyota Financial Savings Bank which was approved on April 12, 2020. Loan processing fees are estimated at approximately $31,696. Ed Napleton St. Louis Imports, Inc. received forgiveness for the First Draw PPP loan. However, in its PPP application, Ed Napleton St. Louis Imports, Inc. did not identify all affiliated entities or otherwise accurately represent the number of employees, tangible net worth, income, or financial need of all affiliated entities.

216.     Defendant Napleton's Mid Rivers Motors, Inc. doing business as Napleton's Mid Rivers Chrysler Dodge Jeep RAM Fiat applied for a First Draw PPP loan in the amount of $910,642 with Toyota Financial Savings Bank which was approved on April 13, 2020. Loan processing fees are estimated at approximately $27,319. Napleton's Mid Rivers Motors, Inc. received forgiveness for the First Draw PPP loan. However, in its PPP application, Napleton's Mid Rivers Motors, Inc. did not identify all affiliated entities or otherwise accurately represent the number of employees, tangible net worth, income, or financial need of all affiliated entities.

217.     Defendant Napleton Hazelwood Imports, LLC doing business as Napleton Hyundai applied for a First Draw PPP loan in the amount of $776,972 with Toyota Financial Savings Bank which was approved on April 13, 2020. Loan processing fees are estimated at approximately $23,309. Napleton Hazelwood Imports, LLC received forgiveness for the First Draw PPP loan. However, in its PPP application, Napleton Hazelwood Imports, LLC did not identify all affiliated entities or otherwise accurately represent the number of employees, tangible net worth, income, or financial need of all affiliated entities.

218.     Defendant Napleton Mid Rivers Imports, Inc. doing business as Napleton's Mid Rivers Kia applied for a First Draw PPP loan in the amount of $648,310 with Bank of America, National Association which was approved on April 11, 2020. Loan processing fees are estimated at approximately $19,449. Napleton Mid Rivers Imports, Inc. received forgiveness for the First Draw PPP loan. However, in its PPP application, Napleton Mid Rivers Imports, Inc. did not

1  identify all affiliated entities or otherwise accurately represent the number of employees, tangible
2  net worth, income, or financial need of all affiliated entities.

3      219.    Defendant Napleton St. Louis Imports, LLC doing business as Napleton St. Louis
4  Nissan applied for a First Draw PPP loan in the amount of $581,315 with JPMorgan Chase Bank,
5  National Association which was approved on April 9, 2020. Loan processing fees are estimated
6  at approximately $17,439. Napleton St. Louis Imports, LLC received forgiveness for the First
7  Draw PPP loan. However, in its PPP application, Napleton St. Louis Imports, LLC did not
8  identify all affiliated entities or otherwise accurately represent the number of employees, tangible
9  net worth, income, or financial need of all affiliated entities.

10      220.    Napleton Autowerks Missouri, Inc. doing business as Porsche Springfield applied
11  for a First Draw PPP loan in the amount of $524,185 with JPMorgan Chase Bank, National
12  Association which was approved on April 14, 2020. Loan processing fees are estimated at
13  approximately $15,725. Napleton Autowerks Missouri, Inc. received forgiveness for the First
14  Draw PPP loan. However, in its PPP application, Napleton Autowerks Missouri, Inc. did not
15  identify all affiliated entities or otherwise accurately represent the number of employees, tangible
16  net worth, income, or financial need of all affiliated entities.

17      221.    Defendant Napleton Wyoming Valley Imports, Inc. doing business as Wyoming
18  Valley BMW, Audi Wyoming Valley, Subaru Wyoming Valley applied for a First Draw PPP
19  loan in the amount of $1,249,060 with JPMorgan Chase Bank, National Association which was
20  approved on April 9, 2020. Loan processing fees are estimated at approximately $37,471.
21  Napleton Wyoming Valley Imports, Inc. received forgiveness for the First Draw PPP loan.
22  However, in its PPP application, Napleton Wyoming Valley Imports, Inc. did not identify all
23  affiliated entities or otherwise accurately represent the number of employees, tangible net worth,
24  income, or financial need of all affiliated entities.

25      222.    Defendant Napleton's Ellwood Motors, Inc. doing business as Napleton Ellwood
26  City Chrysler Dodge Jeep RAM applied for a First Draw PPP loan in the amount of $433,585
27  with Bank of America, National Association which was approved on April 28, 2020. Loan

28

processing fees are estimated at approximately $13,007. The loan has Exemption 4 listed for its loan status. However, in its PPP application, Napleton's Ellwood Motors, Inc. did not identify all affiliated entities or otherwise accurately represent the number of employees, tangible net worth, income, or financial need of all affiliated entities.

223.     Defendant Napleton Brookfield Imports, LLC doing business as Toyota of Brookfield applied for a First Draw PPP loan in the amount of $1,572,450 with Toyota Financial Savings Bank which was approved on April 9, 2020. Loan processing fees are estimated at approximately $47,173. Napleton Brookfield Imports, LLC received forgiveness for the First Draw PPP loan. However, in its PPP application, Napleton Brookfield Imports, LLC did not identify all affiliated entities or otherwise accurately represent the number of employees, tangible net worth, income, or financial need of all affiliated entities.

224.     Defendant Napleton Bluemound Imports, LLC doing business as Lexus of Brookfield applied for a First Draw PPP loan in the amount of $1,541,167.50 with Toyota Financial Savings Bank which was approved on April 9, 2020. Loan processing fees are estimated at approximately $46,235. Napleton Bluemound Imports, LLC received forgiveness for the First Draw PPP loan. However, in its PPP application, Napleton Bluemound Imports, LLC did not identify all affiliated entities or otherwise accurately represent the number of employees, tangible net worth, income, or financial need of all affiliated entities.

225.     Defendant Napleton Autowerks Wisconsin, Inc. doing business as Napleton Chevrolet Columbus applied for a First Draw PPP loan in the amount of $194,072 with JPMorgan Chase Bank, National Association which was approved on April 11, 2020. Loan processing fees are estimated at approximately $9,703. Napleton Autowerks Wisconsin, Inc. received forgiveness for the First Draw PPP loan. However, in its PPP application, Napleton Autowerks Wisconsin, Inc. did not identify all affiliated entities or otherwise accurately represent the number of employees, tangible net worth, income, or financial need of all affiliated entities.

226.     Defendant Napleton's North Palm Auto Park, Inc. doing business as Napleton's

Northlake Chrysler Dodge Jeep RAM applied for a First Draw PPP loan in the amount of $1,689,493 with Toyota Financial Savings Bank which was approved on April 12, 2020. Loan processing fees are estimated at approximately $50,684. Napleton's North Palm Auto Park, Inc. received forgiveness for the First Draw PPP loan. However, in its PPP application, Napleton's North Palm Auto Park, Inc. did not identify all affiliated entities or otherwise accurately represent the number of employees, tangible net worth, income, or financial need of all affiliated entities.

227.    Defendant Napleton Enterprises, LLC doing business as Napleton Kissimmee Chrysler Dodge Jeep RAM applied for a First Draw PPP loan in the amount of $1,314,743 with Toyota Financial Savings Bank which was approved on April 12, 2020. Loan processing fees are estimated at approximately $39,442. Napleton Enterprises, LLC received forgiveness for the First Draw PPP loan. However, in its PPP application, Napleton Enterprises, LLC did not identify all affiliated entities or otherwise accurately represent the number of employees, tangible net worth, income, or financial need of all affiliated entities.

228.    Defendant Napleton's Palm Beach Imports, LLC doing business as Napleton's Palm Beach Acura applied for a First Draw PPP loan in the amount of $763,077 with JPMorgan Chase Bank, National Association which was approved on April 9, 2020. Loan processing fees are estimated at approximately $22,892. Napleton's Palm Beach Imports, LLC received forgiveness for the First Draw PPP loan. However, in its PPP application, Napleton's Palm Beach Imports, LLC did not identify all affiliated entities or otherwise accurately represent the number of employees, tangible net worth, income, or financial need of all affiliated entities.

229.    Defendant EFN West Palm Motor Sales, LLC dba Napleton's West Palm Hyundai applied for a First Draw PPP loan in the amount of $1,177,870 with Toyota Financial Savings Bank which was approved on April 14, 2020. Loan processing fees are estimated at approximately $35,336. EFN West Palm Motor Sales, LLC received forgiveness for the First Draw PPP loan. However, in its PPP application, EFN West Palm Motor Sales, LLC did not identify all affiliated entities or otherwise accurately represent the number of employees, tangible

net worth, income, or financial need of all affiliated entities.

230.    Defendant Napleton Orlando Imports, LLC doing business as Napleton's Volkswagen of Orlando applied for a First Draw PPP loan in the amount of $542,897 with Old National Bank which was approved on April 30, 2020. Loan processing fees are estimated at approximately $16,286. Napleton Orlando Imports, LLC received forgiveness for the First Draw PPP loan. However, in its PPP application, Napleton Orlando Imports, LLC did not identify all affiliated entities or otherwise accurately represent the number of employees, tangible net worth, income, or financial need of all affiliated entities.

231.    Defendant Napleton Sanford Imports, LLC doing business as Napleton's Volkswagen of Sanford applied for a First Draw PPP loan in the amount of $539,752 with First Midwest Bank, A Division of Old National Bank which was approved on April 30, 2020. Loan processing fees are estimated at approximately $16,192. The loan has Exemption 4 listed for its loan status. However, in its PPP application, Napleton Sanford Imports, LLC did not identify all affiliated entities or otherwise accurately represent the number of employees, tangible net worth, income, or financial need of all affiliated entities.

232.    Defendant North Palm Motors, LLC doing business as Napleton Northlake Kia applied for a First Draw PPP loan in the amount of $740,390 with First Midwest Bank, A Division of Old National Bank which was approved on April 30, 2020. Loan processing fees are estimated at approximately $22,211. The loan has Exemption 4 listed for its loan status. However, in its PPP application, North Palm Motors, LLC did not identify all affiliated entities or otherwise accurately represent the number of employees, tangible net worth, income, or financial need of all affiliated entities.

233.    Defendant North Palm Hyundai, LLC doing business as Napleton's North Palm Hyundai applied for a First Draw PPP loan in the amount of $613,282 with Bank of America, National Association which was approved on April 12, 2020. Loan processing fees are estimated at approximately $18,398. North Palm Hyundai, LLC received forgiveness for the First Draw PPP loan. However, in its PPP application, North Palm Hyundai, LLC did not identify all

affiliated entities or otherwise accurately represent the number of employees, tangible net worth, income, or financial need of all affiliated entities.

234. Defendant Clermont Motors, LLC doing business as Napleton Clermont Chrysler Jeep Dodge RAM applied for a First Draw PPP loan in the amount of $1,033,255 with JPMorgan Chase Bank, National Association which was approved on April 11, 2020. Loan processing fees are estimated at approximately $30,997. Clermont Motors, LLC received forgiveness for the First Draw PPP loan. However, in its PPP application, Clermont Motors, LLC did not identify all affiliated entities or otherwise accurately represent the number of employees, tangible net worth, income, or financial need of all affiliated entities.

235. Defendant Augusta Imports, LLC doing business as Napleton Infiniti of Augusta applied for a First Draw PPP loan in the amount of $401,512 with Bank of America, National Association which was approved on April 29, 2020. Loan processing fees are estimated at approximately $12,045. Augusta Imports, LLC received forgiveness for the First Draw PPP loan. However, in its PPP application, Augusta Imports, LLC did not identify all affiliated entities or otherwise accurately represent the number of employees, tangible net worth, income, or financial need of all affiliated entities.

236. Defendant Macon Imports, LLC doing business as Infiniti of Macon applied for a First Draw PPP loan in the amount of $255,782 with JPMorgan Chase Bank, National Association which was approved on April 10, 2020 and a Second Draw PPP loan in the amount of $282,960 with First Midwest Bank, A Division of Old National Bank which was approved on April 28, 2021. Loan processing fees are estimated at approximately $12,789 and approximately $14,148, respectively. Macon Imports, LLC received forgiveness for both the First Draw PPP loan and Second Draw PPP loan. However, in its PPP applications, Macon Imports, LLC did not identify all affiliated entities or otherwise accurately represent the number of employees, tangible net worth, income, or financial need of all affiliated entities. Moreover, in the Second Draw PPP loan application, Macon Imports, LLC did not list an accurate number of employees that included employees at all affiliated entities. Applying with only a select subset of dealerships

also made it impossible for lenders to assess whether affiliated entities suffered the sufficient reduction in gross receipts required for Second Draw PPP loan eligibility.

237.    Defendant EFN Westmont Real Estate Holdings LLC withheld information from PPP loan applications that would have further shown that Napleton Auto Group and affiliated entities were ineligible for PPP loans.

238.    Defendant EFN Lansing Property LLC withheld information from PPP loan applications that would have further shown that Napleton Auto Group and affiliated entities were ineligible for PPP loans.

239.    Defendant EFN Urbana Properties LLC withheld information from PPP loan applications that would have further shown that Napleton Auto Group and affiliated entities were ineligible for PPP loans.

240.    Defendant Napleton Properties LLC withheld information from PPP loan applications that would have further shown that Napleton Auto Group and affiliated entities were ineligible for PPP loans.

241.    Defendant Sedgley Partners LLC withheld information from PPP loan applications that would have further shown that Napleton Auto Group and affiliated entities were ineligible for PPP loans.

242.    Defendant EFN Carmel Properties LLC withheld information from PPP loan applications that would have further shown that Napleton Auto Group and affiliated entities were ineligible for PPP loans.

243.    Defendant EFN Fishers Properties LLC withheld information from PPP loan applications that would have further shown that Napleton Auto Group and affiliated entities were ineligible for PPP loans.

244.    Defendant EFN Import Properties LLC withheld information from PPP loan applications that would have further shown that Napleton Auto Group and affiliated entities were ineligible for PPP loans.

245.    Defendant EFN Wayzata Properties LLC withheld information from PPP loan

1  applications that would have further shown that Napleton Auto Group and affiliated entities were
2  ineligible for PPP loans.

3      246.    Defendant EFN St Peters Property II LLC withheld information from PPP loan
4  applications that would have further shown that Napleton Auto Group and affiliated entities were
5  ineligible for PPP loans.

6      247.    Defendant EFN 4951 Executive Centre Property LLC withheld information from
7  PPP loan applications that would have further shown that Napleton Auto Group and affiliated
8  entities were ineligible for PPP loans.

9      248.    Defendant EFN St. Louis Property LLC withheld information from PPP loan
10  applications that would have further shown that Napleton Auto Group and affiliated entities were
11  ineligible for PPP loans.

12      249.    Defendant Napleton Equities LLC withheld information from PPP loan
13  applications that would have further shown that Napleton Auto Group and affiliated entities were
14  ineligible for PPP loans.

15      250.    Defendant EFN Brookfield Property LLC withheld information from PPP loan
16  applications that would have further shown that Napleton Auto Group and affiliated entities were
17  ineligible for PPP loans.

18      251.    Defendant EFN Bluemound Property LLC withheld information from PPP loan
19  applications that would have further shown that Napleton Auto Group and affiliated entities were
20  ineligible for PPP loans.

21      252.    Defendant 100 West Golf LLC withheld information from PPP loan applications
22  that would have further shown that Napleton Auto Group and affiliated entities were ineligible
23  for PPP loans.

24      253.    Defendant EFN Hazelwood Properties LLC withheld information from PPP loan
25  applications that would have further shown that Napleton Auto Group and affiliated entities were
26  ineligible for PPP loans.

27      254.    Defendant Napleton Investment Partnership LP withheld information from PPP
28

- 72 -

loan applications that would have further shown that Napleton Auto Group and affiliated entities were ineligible for PPP loans.

255.     Defendant EFN Rochester Properties LLC withheld information from PPP loan applications that would have further shown that Napleton Auto Group and affiliated entities were ineligible for PPP loans.

256.     Defendant EFN Hazelwood Properties LLC withheld information from PPP loan applications that would have further shown that Napleton Auto Group and affiliated entities were ineligible for PPP loans.

257.     Defendant EFN Wyoming Valley Properties LLC withheld information from PPP loan applications that would have further shown that Napleton Auto Group and affiliated entities were ineligible for PPP loans.

258.     Defendant EFN Ellwood Property LLC withheld information from PPP loan applications that would have further shown that Napleton Auto Group and affiliated entities were ineligible for PPP loans.

259.     Defendant EFN Downers Grove Property LLC withheld information from PPP loan applications that would have further shown that Napleton Auto Group and affiliated entities were ineligible for PPP loans.

260.     Defendant EFN Aurora Property LLC withheld information from PPP loan applications that would have further shown that Napleton Auto Group and affiliated entities were ineligible for PPP loans.

261.     Defendants Edward F. Napleton, Maureen Napleton, Stephen R. Napleton, William F Napleton, Christopher Napleton, Paul Napleton, Brian Napleton, Katherine Napleton, and Ken Stevens withheld information from PPP loan applications that would have further shown that affiliated entities of Napleton Auto Group were ineligible for PPP loans, such as information showing that collectively affiliated entities of Napleton Auto Group have many hundreds of employees. Tables showing applicant names, loan amounts, and jobs reported are below. Affiliated entities of Napleton Auto Group obtained and sought forgiveness for at least

**$50,692,910** of PPP loans, including at least $3,924,164 of Second Draw PPP loans.

**Table 4: Defendants' First Draw PPP Loans**

| Applicant | Loan Amount |
|---|---|
| Napleton's Arlington Heights Motors, Inc. | $1,575,815 |
| Ed Napleton Elmhurst Imports, Inc. | $1,415,837 |
| Ed Napleton Westmont Imports, Inc. | $1,145,200 |
| Napleton's Autowerks, Inc. | $1,046,975 |
| Napleton's River Oaks Motors, Inc. | $1,015,247.50 |
| Ed Napleton Calumet City Imports, Inc. | $915,710 |
| Napleton Automotive of Urbana, LLC | $892,000 |
| Napleton's Schaumburg Pontiac-GMC Inc. | $808,022 |
| Napleton Motor Corp. | $775,565 |
| Napleton Urbana Imports LLC | $735,500 |
| Napleton's Park Ridge Lincoln Inc. | $604,407 |
| Napleton's River Oaks Cadillac, Inc. | $601,102 |
| Napleton's Schaumburg Subaru, Inc. | $469,797 |
| Napleton's Countryside Motors, Inc. | $386,315 |
| Napleton Schaumburg Motors, Inc. | $336,125 |
| Napleton Libertyville, Inc. | $312,325 |
| Napleton's Autowerks of Bourbonnais, Inc. | $248,000 |
| Napleton's Palatine Motors Holding, Inc. | $243,270 |
| Fran Napleton Lincoln, Inc. | $234,300 |
| Ed Napleton Oak Lawn Imports, Inc. | $1,011,290 |
| Napleton Aurora Imports, Inc. | $1,165,377 |
| Napleton's Goldcoast Imports, Inc. | $447,580 |
| Steve Foley Cadillac, Inc. | $961,132 |

FIRST AMENDED COMPLAINT

| | |
|---|---|
| Napleton 1050, Inc. | $593,422 |
| Napleton 6677, Inc. | $130,710 |
| Napleton Fleet, Inc. | $188,550 |
| North American Automotive Services, Inc. | $1,572,102 |
| Oak Hill Marketing | $347,947 |
| Sessler Ford, Inc. | $634,675 |
| Napleton Carmel Motors, LLC | $750,280 |
| Napleton's Autowerks of Indiana, Inc. | $488,810 |
| Napleton Fishers Imports, LLC | $471,902 |
| Napleton Carmel Imports, LLC | $356,097 |
| Napleton 1301, Inc. | $131,395 |
| Napleton Italian Imports, LLC | $173,430 |
| Napleton Twin Cities Imports, LLC | $3,369,123 |
| Napleton Wayzata Motors, LLC | $1,306,930 |
| Napleton Rochester Imports, LLC | $346,108 |
| Ed Napleton St. Louis Imports, Inc. | $1,056,562 |
| Napleton's Mid Rivers Motors, Inc. | $910,642 |
| Napleton Hazelwood Imports, LLC | $776,972 |
| Napleton Mid Rivers Imports, Inc. | $648,310 |
| Napleton St. Louis Imports, LLC | $581,315 |
| Napleton Autowerks Missouri, Inc. | $524,185 |
| Napleton Wyoming Valley Imports, Inc. | $1,249,060 |
| Napleton's Ellwood Motors, Inc. | $433,585 |
| Napleton Brookfield Imports, LLC | $1,572,450 |
| Napleton Bluemound Imports, LLC | $1,541,167.50 |
| Napleton Autowerks Wisconsin, Inc. | $194,072 |
| Napleton's North Palm Auto Park, Inc. | $1,689,493 |
| Napleton Enterprises, LLC | $1,314,743 |

FIRST AMENDED COMPLAINT

| | |
|---|---|
| Napleton's Palm Beach Imports, LLC | $763,077 |
| EFN West Palm Motor Sales, LLC | $1,177,870 |
| Napleton Orlando Imports, LLC | $542,897 |
| Napleton Sanford Imports, LLC | $539,752 |
| North Palm Motors, LLC | $740,390 |
| North Palm Hyundai, LLC | $613,282 |
| Clermont Motors, LLC | $1,033,255 |
| Augusta Imports, LLC | $401,512 |
| Macon Imports, LLC | $255,782 |
| Total | **$46,768,746** |

**Table 5: Defendants' Second Draw PPP Loans**

| Applicant | Loan Amount |
|---|---|
| Napleton's Schaumburg Pontiac-GMC Inc. | $642,542 |
| Napleton Urbana Imports LLC | $680,830 |
| Napleton's Park Ridge Lincoln Inc. | $607,675 |
| Napleton's Schaumburg Subaru Inc. | $409,270 |
| Napleton Libertyville, Inc. | $312,325 |
| Sessler Ford, Inc. | $748,662 |
| Napleton 1301 Inc. | $239,900 |
| Macon Imports, LLC | $282,960 |
| Total | **$3,924,164** |

**Table 6: Defendants' Jobs Reported on PPP Applications**

| Applicant | Jobs Reported |
|---|---|
| Napleton's Arlington Heights Motors, Inc. | 101 (First Draw) |
| Ed Napleton Elmhurst Imports, Inc. | 85 (First Draw) |
| Ed Napleton Westmont Imports, Inc. | 71 (First Draw) |
| Napleton's Autowerks, Inc. | 80 (First Draw) |
| Napleton's River Oaks Motors, Inc. | 70 (First Draw) |
| Ed Napleton Calumet City Imports, Inc. | 60 (First Draw) |
| Napleton Automotive of | 101 (First Draw) |

| | |
|---|---|
| Urbana, LLC | |
| Napleton's Schaumburg Pontiac-GMC Inc. | 63 (First Draw) and 61 (Second Draw) |
| Napleton Motor Corp. | 62 (First Draw) |
| Napleton Urbana Imports LLC | 65 (First Draw) and 65 (Second Draw) |
| Napleton's Park Ridge Lincoln Inc. | 40 (First Draw) and 51 (Second Draw) |
| Napleton's River Oaks Cadillac, Inc. | 48 (First Draw) |
| Napleton's Schaumburg Subaru, Inc. | 32 (First Draw) and 28 (Second Draw) |
| Napleton's Countryside Motors, Inc. | 26 (First Draw) |
| Napleton Schaumburg Motors, Inc. | 20 (First Draw) |
| Napleton Libertyville, Inc. | 22 (First Draw) and 28 (Second Draw) |
| Napleton's Autowerks of Bourbonnais, Inc. | 9 (First Draw) |
| Napleton's Palatine Motors Holding, Inc. | 26 (First Draw) |
| Fran Napleton Lincoln, Inc. | 18 (First Draw) |
| Ed Napleton Oak Lawn Imports, Inc. | 50 (First Draw) |
| Napleton Aurora Imports, Inc. | 92 (First Draw) |
| Napleton's Goldcoast Imports, Inc. | 30 (First Draw) |
| Steve Foley Cadillac, Inc. | 69 (First Draw) |
| Napleton 1050, Inc. | 38 (First Draw) |
| Napleton 6677, Inc. | 10 (First Draw) |
| Napleton Fleet, Inc. | 11 (First Draw) |
| North American Automotive Services, Inc. | 103 (First Draw) |
| Oak Hill Marketing | 28 (First Draw) |
| Sessler Ford, Inc. | 50 (First Draw) and 50 (Second Draw) |
| Napleton Carmel Motors, LLC | 49 (First Draw) |
| Napleton's Autowerks of Indiana, Inc. | 50 (First Draw) |
| Napleton Fishers Imports, LLC | 32 (First Draw) |
| Napleton Carmel Imports, LLC | 29 (First Draw) |
| Napleton 1301, Inc. | 24 (First Draw) and 25 (Second Draw) |
| Napleton Italian Imports, LLC | 19 (First Draw) |

FIRST AMENDED COMPLAINT

| | |
|---|---|
| Napleton Twin Cities Imports, LLC | 225 (First Draw) |
| Napleton Wayzata Motors, LLC | 99 (First Draw) |
| Napleton Rochester Imports, LLC | 28 (First Draw) |
| Ed Napleton St. Louis Imports, Inc. | 60 (First Draw) |
| Napleton's Mid Rivers Motors, Inc. | 60 (First Draw) |
| Napleton Hazelwood Imports, LLC | 64 (First Draw) |
| Napleton Mid Rivers Imports, Inc. | 39 (First Draw) |
| Napleton St. Louis Imports, LLC | 56 (First Draw) |
| Napleton Autowerks Missouri, Inc. | 38 (First Draw) |
| Napleton Wyoming Valley Imports, Inc. | 101 (First Draw) |
| Napleton's Ellwood Motors, Inc. | 43 (First Draw) |
| Napleton Brookfield Imports, LLC | 137 (First Draw) |
| Napleton Bluemound Imports, LLC | 125 (First Draw) |
| Napleton Autowerks Wisconsin, Inc. | 19 (First Draw) |
| Napleton's North Palm Auto Park, Inc. | 160 (First Draw) |
| Napleton Enterprises, LLC | 127 (First Draw) |
| Napleton's Palm Beach Imports, LLC | 59 (First Draw) |
| EFN West Palm Motor Sales, LLC | 95 (First Draw) |
| Napleton Orlando Imports, LLC | 43 (First Draw) |
| Napleton Sanford Imports, LLC | 37 (First Draw) |
| North Palm Motors, LLC | 52 (First Draw) |
| North Palm Hyundai, LLC | 51 (First Draw) |
| Clermont Motors, LLC | 94 (First Draw) |
| Augusta Imports, LLC | 37 (First Draw) |
| Macon Imports, LLC | 24 (First Draw) and 27 (Second Draw) |
| Total | **3,556** (First Draw) and **335** (Second Draw)* |

- 78 -

**\*The First Draw and Second Draw employee totals do not include employee numbers for dealerships that did not apply for PPP loans during the corresponding loan draw periods. Including employees for these dealerships would add many hundreds of additional employees to the totals.**

## VIII. CAUSES OF ACTION

### A. FIRST CAUSE OF ACTION
**Submission of False Claim**
**31 U.S.C. § 3729(a)(1)(A)**

262.    Relator incorporates all of the allegations in the above paragraphs as though fully alleged herein.

263.    A party makes a false claim when they knowingly present, or cause to be presented, a false or fraudulent claim for payment or approval. 31 U.S.C. § 3729(a)(1)(A).

264.    Defendants knowingly made false claims when they submitted PPP loan applications certifying that they were eligible for PPP loans and that all information included with their application was true and accurate in material respects and when they submitted PPP loan forgiveness applications certifying that PPP loan proceeds were used for eligible purposes when Defendants were never eligible for PPP loans.

265.    Without these certifications, the United States would not have provided Defendants with the at least approximately $50,629,910 of PPP loans and forgiven at least approximately $44,246,337 of the PPP loans that Defendants received.

266.    Without these certifications, the United States would not have provided lenders with an estimated approximately $1,609,814 dollars of loan processing fees.

267.    The United States thus suffered actual damages of at least approximately $45,856,151 and should be awarded three times these damages and should be awarded maximum penalties for each violation of 31 U.S.C. § 3729(a)(1)(A).

**B. SECOND CAUSE OF ACTION**
**False Statement in Support of Claim**
**31 U.S.C. § 3729(a)(1)(B)**

268.    Relator incorporates all of the allegations in the above paragraphs as though fully alleged herein.

269.    A party makes a false claim when they knowingly make, uses, or cause to be made or used, a false record or statement material to a false or fraudulent claim. 31 U.S.C. § 3729(a)(1)(B).

270.    Defendants knowingly made numerous false statements in their PPP loan and forgiveness applications.

271.    Without these false statements, the United States would not have provided Defendants with at least $50,629,910 of PPP loans and forgiven at least approximately $44,246,337 of the PPP loans that Defendants received.

272.    Without these false statements, the United States would not have provided lenders with an estimated approximately $1,609,814 dollars of loan processing fees.

273.    The United States thus suffered actual damages of at least approximately $45,856,151 millions of dollars and should be awarded three times these damages and should be awarded maximum penalties for each violation of 31 U.S.C. § 3729(a)(1)(B).

**C. THIRD CAUSE OF ACTION**
**Conspiracy to Violate the False Claims Act**
**31 U.S.C. § 3729(a)(1)(C)**

274.    Relator incorporates all of the allegations in the above paragraphs as though fully alleged herein.

275.    A party violates the False Claims Act when it has conspired to commit a violation of particular subparagraphs of the Act, including subparagraphs (a)(1)(A), (B) or (G). 31 U.S.C. § 3729(a)(1)(C).

276.    Defendants (including real estate holding companies) knowingly conspired to violate the False Claims Act when in connection with the Addendum A and all communications

1  concerning Addendum A, they agreed to include incomplete and otherwise inaccurate

2  information.

3      277.    If not for Defendants' provision of information that did not identify the full size of

4  affiliated entities and retention of loan proceeds, the United States would not have provided

5  Defendants with the at least $50,692,910 of PPP loans and forgiven at least approximately

6  $44,246,337 of the PPP loans that Defendants received.

7      278.    Without Defendants' provision of information that did not identify the full size of

8  affiliated entities and retention of loan proceeds, the United States would not have provided

9  lenders with an estimated approximately $1,609,814 dollars of loan processing fees.

10     279.    The United States thus suffered actual damages of at least approximately

11 $45,856,151 and should be awarded three times these damages and should be awarded maximum

12 penalties for each violation of 31 U.S.C. § 3729(a)(1)(C).

13                     **D. FOURTH CAUSE OF ACTION**
                   **Avoidance of Obligation to Pay Government**
14                      **31 U.S.C. § 3729(a)(1)(G)**

15     280.    Relator incorporates all of the allegations in the above paragraphs as though fully

16 alleged herein.

17     281.    A party knowingly makes, uses or causes to be made or used, a false record or

18 statement material to an obligation to pay or transmit money or property to the government, or

19 knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or

20 transit money or property to the government. 31 U.S.C. § 3729(a)(1)(G).

21     282.    Defendants knowingly avoided their obligation to pay the government when they

22 retained PPP loan proceeds where the proceeds were not used for eligible purposes. This

23 occurred when Defendants received First Draw PPP loan proceeds after the effective date of the

24 $20 million PPP loan cap and were obligated to return the excess loan proceeds but instead

25 retained the excess loan proceeds.

26     283.    Because Defendants retained PPP loan proceeds, the United States lost as much as

27 $26,768,746 of First Draw PPP loans exceeding $20 million PPP loan cap and loan processing

28

fees for potentially all First Draw PPP loans which are estimated at approximately $1,475,386.

284.   The United States thus suffered actual damages of as much as $28,244,132 and should be awarded three times these damages and should be awarded maximum penalties for each violation of 31 U.S.C. § 3729(a)(1)(G).

## IX. PRAYER FOR RELIEF

WHEREFORE, Relator respectfully prays that this Court:

a.   Pursuant to the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, enter a judgement against Defendants for three times the actual damages that the United States of America has sustained because of Defendants' actions, plus the maximum civil penalty for each violation of 31 U.S.C. § 3729;

b.   Pursuant to 31 U.S.C. § 3730(d), award Relator the maximum amount of proceeds of this action allowed, including reasonable attorneys' fees and costs;

c.   If the United States elects to intervene and proceed with this action, award Relator between 15% and 25% of the proceeds of this action or of any settlement in accordance with 31 U.S.C. § 3730(d)(1);

d.   If the United States does not proceed with this action, award Relator between 25% and 30% of the proceeds of this action or any settlement in accordance with 31 U.S.C. § 3730(d)(2);

e.   If the United States elects to pursue an alternate remedy, award Relator a share of that alternate remedy in accordance with 31 U.S.C. § 3730(c)(5);

f.   Award the United States and Relator prejudgment and post judgment interest; and

g.   Award the United States and Relator all other relief which they are reasonably entitled to receive.

## X. DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Relator demands a jury trial.

Respectfully submitted,

Dated: August 25, 2025

Signature: _Aaron Ezroj_

AARON EZROJ
QUI TAM LAW, P.C.
Attorney for Relator